493 A.2d 341

COMPTROLLER OF the TREASURY

v.

FAIRCHILD INDUSTRIES, INC.

No. 115, Sept. Term, 1984.

Court of Appeals of Maryland.

June 7, 1985.

Gerald Langbaum, Asst. Atty. Gen., Annapolis (Stephen H. Sachs, Atty. Gen., Baltimore, and John K. Barry, Asst. Atty. Gen., Annapolis, on brief), for appellant.

Michael L. Quinn, Baltimore (Marvin J. Garbis and Garbis & Schwait, Baltimore, on brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired) and ALAN M. WILNER, Associate Judge of the Court of Special Appeals, Specially Assigned.

MURPHY, Chief Judge.

The question presented is whether, under Maryland Code (1957, 1980 Repl. Vol.), Article 81, § 310(c), a corporate taxpayer is entitled to interest on a state income tax refund arising out of a carryback of a net operating loss and, if so, the date from which interest must be paid. Section 310(c) provides that interest shall be paid on income tax refunds

"accounting from the date the return required under this subtitle was due to be filed, but interest may not be paid on tax refunds now pending or subsequently filed pursuant to this section if the tax originally paid was paid in whole or in part by reason of a mistake or error on the part of the taxpayer and not attributable to the State or any department or agency thereof ...." [1]

I

Fairchild Industries, Inc. (Fairchild), a calendar year taxpayer, timely filed its Maryland corporate income tax re-

---

[1]. Not involved in this case is a further provision of § 310(c) prohibiting the payment of interest on any tax refund "if the refund is attributable to excessive withholding or overestimating the tax under [the tax statute]."

turns for the 1975, 1976 and 1977 tax years. The returns were filed by the extended due dates of October 15, 1976, 1977 and 1978, respectively, as permitted by § 306 of Art. 81.

For the 1978 tax year, Fairchild incurred a net operating loss which, by § 280A of Art. 81, may be used as a retroactive income tax deduction (a "carryback") for each of the preceding three tax years. Thus, Fairchild's reported taxable income for the 1975, 1976 and 1977 tax years was entitled to be recomputed and reduced by the amount of the net operating loss, resulting in a refund of taxes previously paid. To claim the refund, Fairchild timely amended its Maryland corporate income tax returns for the 1975, 1976 and 1977 tax years and recomputed its taxable income and final tax liability to reflect the net operating loss. The amended returns, filed on September 27, 1979, showed refunds due to Fairchild for each of the three tax years in question and Fairchild received refund payments totalling $728,152, without interest.

Upon Fairchild's challenge to the Comptroller's denial of interest on the refunds, the Maryland Tax Court determined that interest was properly payable thereon, from which order the Comptroller appealed to the Circuit Court for Baltimore City. The Tax Court further determined that interest on Fairchild's tax refunds accrued only from September 27, 1979, the date the amended returns reflecting the net operating loss carryback were filed. From this determination, Fairchild appealed to the circuit court.

The circuit court (Angeletti, J.), affirming in part and reversing in part, held that Fairchild was entitled to interest on the refunds commencing from the extended due dates of the original returns, rather than from the date the amended returns were filed. Upon the Comptroller's appeal to the Court of Special Appeals, we granted certiorari, 483 A.2d 237, to consider the important issues raised in the case.

## II

Entitlement to interest on a tax refund is a matter of grace which can only be authorized by legislative enactment. *Comptroller v. Campanella,* 265 Md. 478, 290 A.2d 475 (1972); *Wasena Housing Corp. v. Levay,* 188 Md. 383, 52 A.2d 903 (1947); *Lady v. Prince George's County,* 43 Md.App. 99, 403 A.2d 1277 (1979). In construing § 310(c) (enacted by ch. 28 of the Acts of 1952), the real and actual intent of the legislature must be ascertained. *Scott v. State,* 297 Md. 235, 465 A.2d 1126 (1983); *State v. Loscomb,* 291 Md. 424, 435 A.2d 764 (1981). The primary source for determining the legislature's intent is the language of the statute itself which should be construed according to its ordinary and natural import. *Ryder Truck Lines v. Kennedy,* 296 Md. 528, 463 A.2d 850 (1983); *Board of Educ. Garrett Co. v. Lendo,* 295 Md. 55, 453 A.2d 1185 (1982); *Vallario v. State Roads Comm'n,* 290 Md. 2, 426 A.2d 1384 (1981). A statute should not be construed by forced or subtle interpretations designed to extend or limit the scope of its operation. *State v. Intercontinental, Ltd.,* 302 Md. 132, 486 A.2d 174 (1985); *Guy v. Director,* 279 Md. 69, 367 A.2d 946 (1977). Thus, where statutory language is plain and free from ambiguity and expresses a definite and sensible meaning, no construction or clarification is needed or permitted. *Hornbeck v. Somerset Co. Bd. of Educ.,* 295 Md. 597, 458 A.2d 758 (1983); *Blum v. Blum,* 295 Md. 135, 453 A.2d 824 (1983); *Koyce v. State, Central Collection Unit,* 289 Md. 134, 422 A.2d 1017 (1980).

## III

Insofar as here pertinent, § 310(c) requires that interest be paid on income tax refunds except where the tax, as originally paid, was due to "a mistake or error on the part of the taxpayer *and* not attributable to the State or any department or agency thereof." (Emphasis added.) The Comptroller maintains that the quoted provisions of the statute must be interpreted in the disjunctive, *i.e.,* that despite the legislature's use of the conjunctive "and," the

exception should nevertheless be viewed as creating alternative conditions—either one of which, if present, would be sufficient to reject a taxpayer's claim for interest on a tax refund. The Comptroller's interpretation is premised on the principle of law recognized by us in *Little Store, Inc. v. State,* 295 Md. 158, 163, 453 A.2d 1215 (1983) that the words "and" and "or" are interchangeable "when it is reasonable and logical to do so." The Comptroller asserts that such a construction is reasonable and logical in this instance, and as no mistake or error can be attributed to the State, the payment of interest on Fairchild's tax refund is prohibited. In so concluding, the Comptroller seizes upon the phrase in § 310(c)—"but interest may not be paid"—to express a general prohibition against the payment of interest on tax refunds. He suggests that this is consistent with a legislative purpose to tighten the law by requiring the State to be at fault before a taxpayer may receive interest on a tax refund.

■ According to Black's Law Dictionary 79 (5th ed. 1979), the word "and" is used as

"[a] conjunction connecting words or phrases expressing the idea that the latter is to be added to or taken along with the first. . . .

"It expresses a general relation or connection, a participation or accompaniment in sequence, having no inherent meaning standing alone but deriving force from what comes before and after. In its conjunctive sense the word is used to conjoin words, clauses, or sentences, expressing the relation of addition or connection, and signifying that something is to follow in addition to that which proceeds and its use implies that the connected elements must be grammatically co-ordinate, as where the elements preceding and succeeding the use of the words refer to the same subject matter."

To like effect, *see* Webster's Third New International Dictionary 80 (unabr. ed. 1971). It is ordinarily presumed that the word "and" should be interpreted according to its plain

and ordinary meaning and that it is not interchangeable with the word "or." C. Sands, 1A *Sutherland Statutory Construction* § 21.14 (4th ed. 1972 and Cum.Supp.1984); 73 Am.Jur.2d *Statutes* § 241 (1974). As we indicated in *Little Store, supra,* circumstances may require courts to construe the word "and" to mean "or" whenever such a conversion is mandated by the context of the words used; the principle is applicable to legislative enactments where it is necessary to effectuate the obvious intention of the legislature. *See Union Ins. Co. v. United States,* 73 U.S. (6 Wall.) 759, 764, 18 L.Ed. 879 (1868); *Duncan v. Wiseman Baking Co.,* 357 S.W.2d 694, 698 (Ky.1962); *Sale v. Johnson,* 258 N.C. 749, 129 S.E.2d 465, 469–70 (1963).

■ There is nothing in the words of § 310(c) or in the legislative history underlying the statute's enactment to suggest that the legislature intended that the disputed provisions of the section be interpreted other than in the conjunctive. We think the plain and ordinary meaning of § 310(c) is that to justify denial of interest on a tax refund there must be a taxpayer mistake or error which is not attributable to the State. *Comptroller v. Davidson, Co.-Exec.,* 234 Md. 269, 199 A.2d 360 (1964) supports the view that the General Assembly intended that interest be paid on refunds unless the overpayment was due *solely* to taxpayer mistake or error. In that case, we considered an earlier statutory provision containing language identical to § 310(c). In holding that the taxpayer was entitled to interest upon overpayment of Maryland estate taxes, we said in dicta:

> "In order to have a forfeiture of interest under sec. 218, there must have been a mistake or error by the taxpayer, not attributable to the State or a State agency. It is perfectly clear, we think, that there was no mistake or error on the part of the executors.... [I]nterest on the refund is required upon any theory of the case." 234 Md. at 273, 199 A.2d 360.

■ In this case, of course, there was no mistake or error on the part of Fairchild in filing its returns for the three

years here in question. Manifestly, therefore, Fairchild is entitled to interest on its refunds.

## IV

The proper computation of interest on Fairchild's refunds is governed by that part of § 310(c) which provides that interest be paid "on such amounts refunded accounting from the date the return required under this subtitle was due to be filed."

The Comptroller, adopting the Tax Court's view, urges that the word "return" in § 310(c) refers to that return which generates the refund upon which the interest is claimed. Consequently, he contends that the accrual of interest in Fairchild's case should be from the date the amended return reflecting the net operating loss carryback was filed, *i.e.*, September 27, 1979.[2] The Comptroller points out that when Fairchild's original returns were filed for the tax years in question, there had been no overpayment of taxes and Fairchild had no basis for seeking refunds; that it was only as a result of the loss incurred during calendar year 1978 that Fairchild was entitled to claim refunds for the three earlier tax years and only then did it establish its entitlement to money held by the Comptroller; that it was the amended returns, and not the original returns, that created the liability for refunds; and that it simply defies logic to attribute to the legislature an intention to pay interest to Fairchild measured from a date years prior to the date on which Fairchild first developed and claimed the very refunds on which it now claims interest.

Fairchild, on the other hand, contends that as held by the circuit court the plain meaning of § 310(c) dictates that

---

**2.** The Comptroller's alternative position is that § 310(c) should be construed in conformance with then existing § 6611(f)(1) of the Internal Revenue Code which provided that interest on a tax overpayment is deemed not to accrue "prior to the close of the taxable year in which such net operating loss or net capital loss arises." Our analysis today obviates the need to address the Comptroller's alternative argument.

interest be computed from the date the original returns were due, *i.e.*, the extended due dates of October 15, 1976, 1977 and 1978, respectively. To hold otherwise, Fairchild claims, is to rewrite the statute to provide that interest should be computed from the date a claim for refund is filed, rather than from the date the return was filed for the year of the refund.

■ As reflected by the differing positions of the Comptroller and Fairchild, we think a doubt or ambiguity exists regarding the meaning and application of the phrase in question, in the context of its usage in § 310(c); it is susceptible to more than one construction and should be given the meaning intended by the legislature. *Hornbeck, supra; Bradshaw v. Prince George's Co.*, 284 Md. 294, 396 A.2d 255 (1979); *State v. Fabritz, supra.* Thus, in construing the pertinent phrase in § 310(c), we may consider not only the literal or usual meaning of its words but its meaning and effect with reference to the objectives and purposes to be accomplished by the enactment, together with the consequences resulting from one meaning rather than another, with real legislative intent prevailing over intent indicated by a literal meaning of the words used. *See Haskell v. Carey*, 294 Md. 550, 451 A.2d 658 (1982); *Walker v. Montgomery County*, 244 Md. 98, 223 A.2d 181 (1966); *State v. Blanken*, 11 Md.App. 460, 275 A.2d 179 (1971). In this regard, a construction of a statute which is unreasonable, illogical or inconsistent with common sense should be avoided. *State v. Intercontinental, Ltd.*, 302 Md. 132, 486 A.2d 174 (1985); *Bailey v. Woel*, 302 Md. 38, 485 A.2d 265 (1984); *Kindley v. Governor of Maryland*, 289 Md. 620, 426 A.2d 908 (1981).

■ As we see it, to interpret the statute to afford the taxpayer a right to interest, commencing from the due date of the original return, rather than from the date the amended return was filed, is inconsistent with common sense and with the legislative purpose in authorizing interest on tax refunds. The interest provisions contained in Article 81 of

the Maryland Code are designed to commence the running of interest from the time that the operative fact arises which entitles a taxpayer or the State to the principal amount in question and for the period that such amounts were held by or subject to the use of the other party.[3]

The event which gave rise to the overpayment of Fairchild's 1975, 1976 and 1977 taxes was its net operating loss in 1978—a year subsequent to the year in which the excess taxes were actually paid. Had there been no net operating loss incurred in 1978, there would have been no net operating loss carryback to the three previous years. Before Fairchild incurred net operating losses in 1978, it had no basis for claiming a refund for overpayment of taxes. From the extended due dates of the original returns until the amended returns were filed, the State was legally entitled to the use and possession of Fairchild's tax payments. The State had no obligation to pay Fairchild a tax refund, let alone interest on the refund, until the later ensuing net operating loss arose and the carryback was claimed. That the law permits a taxpayer to subsequently carryback a net operating loss and to obtain a refund in no way reflects a taxpayer's right to derive the benefits of the funds during the intervening period. Plainly, the nature and context of a net operating loss carryback supports the end result that where a refund for taxes arises from a net operating loss carryback, interest should be computed from the date the amended return claiming the net operating loss carryback is filed.

In summary, it is the required return which generates the tax refund that the legislature contemplated in enacting the phrase of § 310(c) here in dispute, *i.e.*, that interest be paid on refunds "accounting from the date the return required

---

**3.** Maryland taxpayers are generally liable for penalty and interest payments for the failure to pay tax when due. Art. 81, § 318. In addition, taxpayers are liable for interest on the tax paid for which an extension of time for filing the return is granted (Art. 81, § 306), and for taxes timely filed but underpaid (Art. 81, § 311).

under this subtitle was due to be filed." Under that provision, interest does not begin to run until the date that the taxpayer files a claim for refund; that is the return essential to obtaining a refund—the event which triggers the running of interest under the statute.

JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO THAT COURT FOR THE ENTRY OF AN ORDER CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID THREE-FOURTHS BY THE APPELLANT AND ONE-FOURTH BY THE APPELLEE.