533 A.2d 301

ST. PAUL FIRE AND MARINE INSURANCE COMPANY

v.

Homer C. HOUSE, et al.

No. 322, Sept. Term, 1987.

Court of Special Appeals of Maryland.

Nov. 12, 1987.
Certiorari Granted Feb. 26, 1988.

Frederick J. Green, Jr. Baltimore, for appellant.

Ralph M. Murdy, Baltimore, for appellees.

Argued before GILBERT, C.J., and ALPERT, and ROSALYN B. BELL, JJ.

ALPERT, Judge.

A dispute over insurance coverage for a medical malpractice claim spawned this appeal, raising a question of first impression in the State of Maryland. The issue is whether article 48A, § 482 of the Annotated Code of Maryland, that requires an insurer to prove "actual prejudice" in order to disclaim coverage because of the insured's failure to give notice, applies to professional liability insurance written in the form of a "claims made" or "discovery" policy. We hold that it does.

Homer C. House, M.D. (appellee herein), an orthopedic surgeon, performed arthroscopic surgery on Mrs. Shirley J. Platzer on October 29, 1985 and allegedly left "a foreign body" (a needle) in her knee. The needle was subsequently removed by Dr. House's associate approximately one month later. In June and September, 1985, counsel for Mr. and Mrs. Platzer wrote to Dr. House, making a claim for damages and requesting that the matter be turned over to Dr. House's insurance carrier. The record indicates that Dr. House took no action in response to these communications. On November 15, 1985, the Platzers filed a claim with the Health Claims Arbitration Board and the parties agreed to a settlement on December 4, 1986.

During the foregoing time, Dr. House was insured by St. Paul Fire & Marine Ins. Co. (appellant) under a "Physicians' Professional Liability Policy—Claims Made." The policy was in effect from January 1, 1983 to January 1, 1986, with a retroactive date of January 1, 1977. Pertinent provisions of the policy provided:

**When you're covered**

To be covered the professional service must have been performed (or should have been performed) after your retroactive date that applies. The claim must also first be made while this agreement is in effect.

**When is a claim made?**

A claim is made on the date you first report an incident or injury to us or our agent. You must include the following information:

—Date, time and place of the incident.

—What happened and what professional service you performed.

—Type of claim you anticipate.

—Name and address of injured party.

—Name and address of any witness.

The policy's retroactive date was January 1, 1977. Thus, the policy covered Dr. House for claims made between January 1, 1983 and January 1, 1986 relating to services that were performed or should have been performed between January 1, 1977 through January 1, 1986.

On February 12, 1986, Dr. House notified Swope–Offut, his insurance broker, of the Platzers' suit. St. Paul learned of the claim indirectly shortly thereafter. Coincidentally, Swope–Offut was an agent for both appellant St. Paul and for Medical Mutual Liability Insurance Society, Dr. House's new insurer.[1] Both insurance companies denied coverage for the Platzer claim.

---

1. Dr. House claims notice to Swope–Offut constituted notice to St. Paul, whereas St. Paul contends said notice was made to Swope–Offut as agent for Medical Mutual and that it did not formally receive notice

On July 1, 1986, Homer C. House, M.D. and Homer C. House, M.D., P.A., filed an action for declaratory judgment in the Circuit Court for Baltimore City seeking an order requiring St. Paul to insure him in the Platzer case then pending before the Health Claims Arbitration Board. Both Dr. House and St. Paul moved for summary judgment. The trial court, finding no genuine dispute as to any material fact, held § 482 of the Insurance Code controlling, granted judgment for Dr. House, and ordered St. Paul to defend Dr. House's case before the Health Claims Arbitration Board. St. Paul filed this timely appeal.

Article 48A, § 482 of the Md.Code provides:

Where any insurer seeks to disclaim coverage on any policy of liability insurance issued by it, on the ground that the insured or anyone claiming the benefits of the policy through the insured has breached the policy by failing to cooperate with the insurer or by not giving requisite notice to the insurer, such disclaimer shall be effective only if the insurer establishes, by a preponderance of affirmative evidence that such lack of cooperation or notice has resulted in actual prejudice to the insurer.

Appellant argues that because of the basic differences between "claims made" and "occurrence" policies, § 482's requirement that prejudice be shown is inapplicable to "claims made" policies. Section 482 was enacted to remedy the harsh result of *Watson v. U.S.F. & G. Co.*, 231 Md. 266, 189 A.2d 625 (1963), which held that the insurance company could disclaim coverage of an occurrence policy for late notice even if it was not prejudiced thereby. Appellant notes that in a "claims made" policy the "operative event" pertinent to the insurer's liability is the date of notification to the insurer; in an "occurrence" policy, however, the operative event is the date of the allegedly negligent act. Thus, according to appellant, a statutorily or judicially imposed extended notice period in a "claims made" policy

until the action for declaratory judgment was filed. This dispute between the parties is irrelevant to our decision.

amounts to a rewriting of the contract negotiated by the parties and increases the coverage purchased by the insured. *See Zuckerman v. National Union Fire Ins. Co.,* 100 N.J. 304, 495 A.2d 395, 406 (N.J.1985).

On the other hand, Dr. House, appellee, argues that the clear and unambiguous language of § 482 and the rules of statutory construction mandate application of the statute to the policy at bar. Appellee also contends that *Washington v. Federal Kemper Insurance Co.,* 60 Md.App. 288, 482 A.2d 503 (1984), *cert. den.,* 302 Md. 289, 487 A.2d 292 (1985), and *Medical Mutual Liability Insurance Society of Maryland v. Miller,* 52 Md.App. 602, 451 A.2d 930 (1982), "reveal an inclination by the Maryland Court of Special Appeals to regard Section 482 as applicable to claims made policies."

Because this case presents an issue of first impression, an explication of "claims made" policies is both necessary and appropriate.

## CLAIMS MADE POLICIES

"Claims made" or "discovery" insurance policies have gained popularity and wide use in the professional liability insurance field during the past 20 years. *See* J. Parker, "The Untimely Demise of the 'Claims Made' Insurance Form? A Critique of *Stine v. Continental Casualty Company,*" 1983 Det.C.L.Rev. 25, 28–29; Comment, "The 'Claims Made' Dilemma in Professional Liability Insurance," 22 UCLA L.Rev. 925, 926 (1975). Generally, "claims made" policies cover liability inducing events if and when a claim is made during the policy term, irrespective of when the events occurred. *Parker, supra,* at 27–28. "Occurrence" policies, on the other hand, "cover liability inducing events occurring during the policy term, irrespective of when an actual claim is presented." *Id.*

The United States Supreme Court explained the difference between the two types of policies succinctly: "An 'occurrence' policy protects the policyholder from liability for any act done while the policy is in effect, whereas a

'claims made' policy protects the holder only against claims made during the life of the policy." *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 535, fn. 3, 98 S.Ct. 2923, 2926, fn. 3, 57 L.Ed.2d 932 (1978). Another commentator noted:

> The major distinction between the "occurrence" policy and the "claims made" policy constitutes the difference between the peril insured. In the "occurrence" policy, the peril insured is the "occurrence" itself. Once the "occurrence" takes place, coverage attaches even though the claim may not be made for some time thereafter. While in the "claims made" policy, it is the making of the claim which is the event and peril being insured and, subject to policy language, regardless of when the occurrence took place.

S. Kroll, "The Professional Liability Policy 'Claims Made'," 13 Forum 842, 843 (1978).

The Court of Appeals of Maryland recently recognized the "claims made" policy in *Mutual Fire, Marine & Inland Insurance Co. v. Vollmer*, 306 Md. 243, 508 A.2d 130 (1986). In response to a certified question from the United States District Court for the District of Maryland (*see* Md.Cts. of Jud.Proc.Code Ann. §§ 12–601 to –609 (1984 Repl.Vol.)), the court held that the "claims made" policy in question covered claims of malpractice *allegedly* committed after the retroactive date.

The Court of Appeals contrasted the function of "claims made" policies with that of the more familiar "occurrence" policies:

> There is greater public familiarity with the "occurrence" type of policy than with the "claims made" type, largely because automobile insurance liability policies are "occurrence" policies, although other perils are covered in such policies as well. Coverage in an "occurrence" policy is provided no matter when the claim is made, subject, of course, to contractual and statutory notice and limitations of actions provisions, providing the act complained of occurred during the policy period. Because the insurer's

liability in such policies ordinarily relates to a definite, easily identifiable and notorious event such as an automobile accident, a fire, a slip and fall injury, or a ship collision, the insurer is ordinarily able to conduct a prompt investigation of the incident and make an early assessment of related injuries and damages with the result that actuarial considerations permit relative certainty in estimating loss ratios, establishing reserves and fixing premium rates.

*"Claims made" or "discovery" policies, on the other hand, are of relatively recent origin and were developed primarily to deal with situations in which the error, omission, or negligent act is difficult to pinpoint and may have occurred over an extended period of time.* In the case of a "claims made" policy written to cover professional liability, the error or omission may be a discrete act or failure to act, or it may consist of a lengthy process and remain latent and undiscoverable for a number of years. Examples include a physician's misdiagnosis, an attorney's fraudulent concealment, or an architect's defective design. From an underwriting perspective, occurrence policies are unrealistic for such risks because of the long or open "tail" exposure which results. When the "event" intended to be covered cannot easily be fixed and the liability for the consequent injury extends long into the future, often well after expiration of the policy, considerations of inflation, upward spiraling jury awards, and legislative and judicial adoption of newly developing concepts of tort law mean that actuarial factors, including fixing premium rates and establishing adequate reserves, are highly speculative. The result, logically, is the establishment of a premium rate schedule sufficiently high to accommodate "worst scenario" jury verdicts returned years after the error, omission, or negligent act.

*Vollmer,* 306 Md. at 253–54, 508 A.2d 13 (emphasis in original) (citing *Stine v. Continental Casualty Co.,* 419 Mich. 89, 90–100, 349 N.W.2d 127, 131–32 (1984)).

Although the foregoing applies generally to "claims made" policies, the specific terms of the individual policies may vary. As the Court of Appeals explained in *Vollmer:*

A claims made professional liability policy may be written to cover all claims made within the policy period no matter when the act or omission giving rise to the liability claim is deemed to have occurred. *See, e.g.,* the policy involved in *Gereboff v. Home Indemnity Co.,* 119 R.I. 814, 383 A.2d 1024 (1978). At the other end of the claims made spectrum is the type of policy involved in *Stine v. Continental Casualty Co., supra,* 419 Mich. at 94, 349 N.W.2d at 129, which provided that the act or omission on which a claim was made in the policy period also had to have occurred after the effective date of the first year of the policy so that, at least in that first year, the policy was not retroactive.

*Id.* 306 Md. at 256, 508 A.2d 13.

As we noted, the policy involved in the case *sub judice* fell in between those two extremes. Although in effect only from January 1, 1983 to January 1, 1986, the policy had a retroactive date of January 1, 1977. Thus, if a claim was made during the policy period, St. Paul was liable for coverage for acts or omissions giving rise to the claim as far back as January 1977.

Courts in other jurisdictions have addressed the question of whether prejudice must be shown before an insurer may deny coverage under an expired "claims made" policy. None of the cases, however, involved application of a statute like Maryland's § 482. Notwithstanding, the following cases support appellant's theory that a requirement of proving prejudice is inapplicable to a "claims made" policy.

In *Gulf Insurance Co. v. Dolan, Fertig and Curtis,* 433 So.2d 512 (Fla.1983), a professional liability insurance policy, like the St. Paul policy at bar, required "that the claim

arise during the policy period [2]; that the claim be known to or made against the insured during said period; and that the insured notify the insurer thereof during said period." [3] *Id.* Dolan, a law firm, received notice of a malpractice claim from a former client on November 19, 1979, the final day of its policy with Gulf Insurance Co. It notified Gulf of the claim on February 12, 1980, after its new insurance carrier disclaimed liability. Gulf denied liability because of lack of notice during the policy period. After in excess of $50,000 was awarded to Dolan's former client, Dolan sought declaratory relief on whether Gulf or its new insurer or both were liable for the judgment. Ultimately, the following question was certified to the Supreme Court of Florida: "As a matter of policy may the court require that 'claims made' professional liability policies should [sic] be subjected to a reasonable additional period beyond the termination date of the policy for reporting claims that arise late in the contract term?". *Id.* at 514.[4] The court answered in the negative, *id.*, explaining that in "claims made" policies notice to the insurer must be given *"during the policy period* itself." *Id.* at 515 (emphasis in original). The court stated:

With claims-made policies, the very act of giving an extension of reporting time after the expiration of the policy period, as the district court proposes, negates the inherent difference between the two contract types. Coverage depends on the claim being made and reported to the insurer during the policy period. Claims-made or

---

**2.** Like the St. Paul policy, Gulf's policy with Dolan also contained a retroactive period during which a covered claim could have arisen.

**3.** The St. Paul policy does not contain a separate "notice" requirement because by the policy's definition a "claim is made" upon the insured's reporting an incident or injury to the insurer. *See infra* at 133–134.

**4.** The district court had held that " 'in order to make the contract fair' ... there should be a reasonable time after the policy period expires for reporting claims that are discovered late in the policy period, even though that time extends beyond the termination of the policy." *Dolan,* 433 So.2d at 514 (citation omitted).

discovery policies are essentially *reporting* policies. If the claim is reported to the insurer during the policy period, then the carrier is legally obligated to pay; if the claim is not reported during the policy period, no liability attaches. If a court were to allow an extension of reporting time after the end of the policy period, such is tantamount to an *extension of coverage* to the insured gratis, something for which the insurer has not bargained. This extension of coverage, by the court, so very different from a mere condition of the policy, in effect rewrites the contract between the two parties. This we cannot and will not do.

*Id.* at 515–16 (emphasis in original, footnote omitted). The court concluded by noting that Dolan had the option of extending the reporting period for a stated fee and specified time period. Dolan, however, rejected the extended coverage; therefore, Dolan " 'received what it paid for by the present policy, with premiums presumably reduced to reflect the limited coverage'. . . . Dolan cannot now be heard to complain." *Id.* at 516 (citation omitted).

In *City of Harrisburg v. International Surplus Lines Insurance Co.*, 596 F.Supp. 954 (M.D.Pa.1984), the court considered whether Pennsylvania case law had established a prejudice requirement in "claims made" liability policies. The Supreme Court of Pennsylvania in *Brakeman v. Potomac Insurance Co.*, 472 Pa. 66, 371 A.2d 193 (1977), held that when "an insurance company seeks to be relieved of its obligations under a liability insurance policy on the ground of late notice, the insurance company will be required to prove that the notice provision was in fact breached and that *the breach resulted in prejudice to its position.*" *Id.* at 198 (emphasis added). The Mayor of Harrisburg, plaintiff in the *International Surplus Lines* case, seeking to enforce coverage by defendant insurance company, argued that *Brakeman* placed a duty on the insurance company to show prejudice from late notice in order validly to deny him coverage. The court concluded that the insurance company

had no duty to insure the Mayor because, *inter alia,*[5] the Mayor had neglected to notify the insurer of the claim during the policy period. The court rejected the Mayor's reliance on *Brakeman,* stating:

> After careful consideration of the differing purposes underlying the issuance of occurrence policies and claims-made policies, however, we conclude that the notice provision of a claims-made policy serves a materially different purpose from one in an occurrence policy. The notice provision of a claims-made policy is just as important to coverage as the requirement that the claim be asserted during the policy period. If the insured does not give notice within the contractually required time period, in the instant case "during the policy period," there is simply no coverage under the policy.

*International Surplus Lines Ins. Co.,* 596 F.Supp. at 961.

*Stine v. Continental Casualty Co.,* 419 Mich. 89, 349 N.W.2d 127 (1984), like the case at bar, involved the construction of an insurance statute and a determination of whether the statute applied to a "claims made" policy. The provisions of the *Stine* policy differed somewhat from the St. Paul policy, however, Stine, an architect, obtained an errors and omissions insurance policy from the defendant, Continental Casualty Co. (CNA). The policy was cancelled on January 26, 1974. Subsequently, on November 26, 1976, a lawsuit was filed against Stine, alleging that negligence had occurred sometime between June 1971 and November 27, 1975. Stine promptly notified CNA and requested it to defend him in the suit. CNA disclaimed liability because, contrary to the terms of the policy, the claim was not made during the policy's life. Stine filed for a declaratory judgment that § 3008 of the Michigan Insurance Code excused

---

**5.** The court held that the Mayor was not covered by the policy at the time of the alleged wrongful act because he was "Mayor-elect" and not "Mayor" at that time. Thus, he was not a "public official or employee," as required under the policy. The court's discussion about the prejudice requirement, therefore, was dicta.

the late notice and that CNA was compelled to defend him. § 3008 provided:

> In such liability insurance policies there shall be a provision that notice given by or on behalf of the insured to any authorized agent of the insurer within this state, with particulars sufficient to identify the insured shall be deemed to be notice to the insurer; and also a *provision that failure to give any notice required to be given by such policy within the time specified therein shall not invalidate any claim made by the insured if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible.*

Mich.Comp.Laws § 500.3008 (Mich.Stat.Ann. § 24.13008) (1987) (emphasis added). Stine argued that because he notified CNA of the claim "as soon as was reasonably possible," the notice provision of the insurance policy was waived and he was entitled to coverage. The Supreme Court of Michigan disagreed, however, holding § 3008 inapplicable. *Stine*, 349 N.W.2d at 135.

Of particular interest to this court is the distinction noted in *Stine* between the policy's "notice provision" and the terms of the policy that determined when a "claim is made." *Id.* at 134–35. The court found that "notice" and "making a claim" were two separate and distinct events under the CNA policy. Making a claim, or "the event causing liability is a third party making a claim upon an insured. . . . the provision of the insuring agreement which is critical to establishing liability in such policies is the time at which the injured third person's claim is made against the insured." *Id.* at 134. In addition, a separate provision of the policy required written notice to the insurer of the claim no later than 60 days after expiration of the policy period. *Id.* The court held that § 3008 applied only to the "notice" provision and not to the third party's making a claim. Thus, although Stine gave notice of the malpractice claim to CNA as soon as was "reasonably possible" as required by § 3008, CNA

was not obligated under the policy because the malpractice claim was not made during the policy term. *Id.* at 135.

Finally, in *Zuckerman v. National Union Fire Insurance Co.*, 100 N.J. 304, 495 A.2d 395 (N.J.1985), the prejudice requirement arose by judicial fiat, not statute. Zuckerman, an attorney, was sued for malpractice by a former client. Zuckerman failed to notify his insurer of the suit because he erroneously "believed the claim was 'minimal' and could be settled within the deductible limits of his insurance policy." *Id.* at 396. His "claims made" type policy expired on February 25, 1982, and on December 28, 1982 he reported the pendency of the malpractice suit to the insurer, National Union. National Union denied coverage because, although the suit was filed during the term of the policy, the company was not given notice until ten months after the policy expired. *Id.* Shortly thereafter, Zuckerman filed suit seeking to compel National Union's indemnification in the malpractice suit. *Id.* at 397. The trial court granted summary judgment for Zuckerman on the ground that National Union had not demonstrated any prejudice as a result of Zuckerman's delay in filing his claim. *Id.* at 398. The Appellate Division reversed in a split decision. *Id.* Zuckerman appealed to the Supreme Court of New Jersey, relying in part on *Cooper v. Government Employees Insurance Co.*, 51 N.J. 86, 237 A.2d 870 (1968), in which the court held that "the carrier may not forfeit the bargained-for protection unless there are both a breach of the notice provision and a likelihood of appreciable prejudice." *Id.* at 94, 237 A.2d 870.

The *Zuckerman* court thoroughly reviewed the development of "claims made" type insurance, its benefits and disadvantages. The court then analyzed specifics of the policy under attack and concluded: "We find no considerations of public policy that would inhibit our enforcement of the 'claims made' policy issued to appellant." *Zuckerman*, 495 A.2d at 404. Next, the court addressed the prejudice issue and stated that *Cooper* was factually inapposite to *Zuckerman* because *Cooper* involved an "occurrence" type

automobile liability policy. *Id.* at 405. Although Cooper's policy had a notice requirement, its purpose was not to "define the coverage ... but rather to aid the insurance carrier in investigating, settling, and defending claims. By statute, failure to give the notice required by such a policy will be excused if notice is given as soon as reasonably possible. N.J.S.A. 17:28–2." *Id.* at 405–06. In a "claims made" policy, however, it is the transmittal of notice of a claim that invokes coverage. *Id.* at 406. "Thus, an extension of the notice period in a 'claims made' policy constitutes an unbargained-for expansion of coverage, *gratis*, resulting in the insurance company's exposure to a risk substantially broader than that expressly insured against in the policy." *Id.* The court concluded, therefore, that the *Cooper* prejudice doctrine is inapplicable to a "claims made" policy. *Id.* at 406.

### THE SUBJECT POLICY

In the case *sub judice*, the pertinent provisions of the St. Paul policy provide:

**Important Note:** This is a claims made coverage. Please read it carefully, especially the When A Claim Is Made and Optional Reporting Endorsement sections.

**When you're covered**

To be covered the professional service must have been performed (or should have been performed) after your retroactive date that applies. The claim must also first be made while this agreement is in effect.

**When is a claim made?**

A claim is made on the date you first report an incident or injury to us or our agent. You must include the following information:

—Date, time and place of the incident.

—What happened and what professional service you performed.

—Type of claim you anticipate.

—Name and address of injured party.

—Name and address of any witness.

**Optional reporting endorsement**

Your professional coverage may end because one of us chooses to cancel or not renew it. If this happens, you have the right to buy an optional extension of coverage. It's called a reporting endorsement.

*This reporting endorsement will cover:*

—Injuries or deaths that occur after the retroactive date and before that [sic] date this agreement ends. And

—*Claims that are first made or reported to us after the ending date of this agreement and before the reporting endorsement ends.*

You must request the reporting endorsement in writing within 30 days after this agreement ends. We'll then sell it to you for a premium based on the rules and rating plans we're using on the day the reporting endorsement begins.

(Emphasis added). St. Paul did offer Dr. House a "reporting endorsement;" Dr. House declined this option.

The policy unambiguously states that a claim is made on the date an incident or injury is reported to St. Paul or its agent. Information relating to the "type of claim ... anticipate[d]" must be supplied to St. Paul. Thus, the insured, not a third party, "makes the claim" by reporting an incident or injury. The insured is offered the "optional reporting endorsement" for, among other possibilities, the reporting of incidents that occur late in the policy period.

Notwithstanding the persuasiveness of appellant's argument to the contrary and the cases in support thereof, we find the language of § 482 dispositive. As Judge Ward stated in his judgment below, "The language of our Maryland General Assembly says what it says, and should not be bent or twisted to give meaning beyond that intended by our legislative bodies. If claims made policies are to be exempted, then the Maryland General Assembly must say it."

In *Washington v. Federal Kemper Insurance Co.*, 60 Md.App. 288, 482 A.2d 503 (1985), this court reviewed the history of the enactment of § 482. We explained:

Prior to 1964, the rule in Maryland was that an insurer was not liable to defend an insured unless there was compliance by the insured with the policy requirement of notice of the accident and forwarding of the suit papers to the insurer. Compliance with the policy provision was a condition precedent to the insurer's liability, whether or not the insurer was prejudiced. *Watson v. United States Fidelity and Guarantee Co.*, 231 Md. 266, 189 A.2d 625 (1963); *Employer's Liability Assurance Corp. v. Perkins*, 169 Md. 269, 181 A. 436 (1935).

In response to the Court of Appeals decision in *Watson*, the Maryland General Assembly enacted Chapter 185 of the Laws of 1964, effective June 1, 1964. This statute is now codified as Section 482 of Article 48A of the Maryland Code. . . .

It is clear, therefore, that the law in Maryland presently requires proof not only that the insured failed to provide the requisite notice to the insurance company but that the insurer suffered actual prejudice from the insured's failure to comply with the policy requirements.

*Id.*, at 293, 482 A.2d 503.

It is well settled that "the cardinal principle of statutory construction is to determine the legislative intent." *Willis v. State*, 302 Md. 363, 374, 488 A.2d 171 (1985). The words of the statute should be construed according to their "ordinary and natural import." *Comptroller of the Treasury v. Fairchild Indus., Inc.*, 303 Md. 280, 284, 493 A.2d 341 (1985). Only if the language of the statute is unclear and ambiguous, should the court "resort to extrinsic aids to divine the legislative intent and purpose." *Willis*, 302 Md. at 374, 488 A.2d 171. "Thus, where statutory language is plain and free from ambiguity and expresses a definite and sensible meaning, no construction or clarification is needed or permitted." *Fairchild*, 303 Md. at 284, 493 A.2d 341. A court "is generally not at liberty to surmise a legislative

intent contrary to the letter of the statute, or to indulge in the license of inserting or omitting words with the view of making the statute express an intent which is not evidenced in the original form." *State Tax Comm'n v. Potomac Elec. Power Co.,* 182 Md. 111, 116, 32 A.2d 382 (1943). These principles must be followed even if the court believes the result will be unjust or harsh, or impose hardship. *Bright v. Unsatisfied Claim & Judgment Fund Bd.,* 275 Md. 165, 169, 338 A.2d 248 (1975); *Schmeizl v. Schmeizl,* 186 Md. 371, 375, 46 A.2d 619 (1946). Over a century ago, the Court of Appeals of Maryland stated:

> The language of a statute is its most natural expositor, and where the language is susceptible of a sensible interpretation, it is not to be controlled by any extraneous considerations.... We are not at liberty to imagine an intent, and bind the letter of the act to that intent; much less can we indulge in the license of striking out and inserting, and remodeling, with the view of making the letter express an intent which the statute in its native form does not evidence. Every construction, therefore, is vicious which requires great changes in the letter of the statute; and of several constructions that is to be preferred, which introduces the most general and uniform remedy.

*Alexander v. Worthington,* 5 Md. 471, 485 (1854).

With these principles in mind, we turn to art. 48A, § 482 of the Annotated Code of Maryland (1979 Repl.Vol.). The statute provides in pertinent part:

> **§ 482. Disclaimer of coverage because of lack of notice or cooperation from insured.**
>
> Where any insurer seeks to disclaim coverage on any policy of liability insurance issued by it, on the ground that the insured ... has breached the policy ... by not giving requisite notice to the insurer, such disclaimer shall be effective only if the insurer establishes, by a preponderance of affirmative evidence that such lack of ... notice has resulted in actual prejudice to the insurer.

According to Black's Law Dictionary at 70 (5th ed. 1979), the word "any" means "some; one out of many; an indefinite number...." It is often synonymous with "either," "every," or "all." In the context used, we conclude that the word "any" as applied to an insurer means "all" or "every" insurer. Further, the policy at issue is a "Professional Liability Policy" and clearly falls within the language of the statute. The language of the statute is very broad, and we find nothing to suggest an intent to exclude "claims made" type policies.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.