606 A.2d 282

**Robert J. HICKEY, et ux.**

v.

**COMPTROLLER OF THE TREASURY.**

**No. 1202, Sept. Term, 1991.**

Court of Special Appeals of Maryland.

May 8, 1992.

Certiorari Denied Sept. 15, 1992.

Robert J. Hickey (Eleanor L. Hickey, on the brief), Bethesda, for appellants.

John K. Barry, Asst. Atty. Gen., Annapolis (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Gerald Langbaum, Asst. Atty. Gen., Annapolis, on the brief), for appellee.

Argued before MOYLAN, ALPERT and MOTZ, JJ.

MOYLAN, Judge.

The appellants, Robert J. and Eleanor L. Hickey, appeal a judgment of the Circuit Court for Montgomery County (Ferretti, J. presiding), affirming an Order of the Maryland Tax Court. The Tax Court's Order denied the appellants' claim for interest on Maryland income tax refunds. The appellants raise three contentions:

1) That the Maryland Tax Court improperly denied interest on the tax refund since April 14, 1980;

2) That the Maryland Tax Court improperly denied interest on the tax refund from its Income Tax Divisions loss of the appellant's protective claims to the present;

3) That the failure to pay interest on the tax refund is unconstitutional.

For the reasons that follow, we affirm.

### FACTS

Appellant-taxpayer Robert J. Hickey is a partner in the law firm of Kirlin, Campbell & Keating. The firm's principal office is located in New York. In 1946, the firm established an office in Washington, D.C. In November, 1971, the Audit Division of the New York Tax Department initiated an audit of the Washington office partners. On November 22, 1972, New York Deputy Tax Commissioner John Donovan informed those partners that they would not have to pay New York taxes provided there was a net flow

of income from the Washington office to the New York office of the firm. For each taxable year thereafter, the Washington office satisfied this condition; it provided a net flow of income to the New York office of the firm. In 1974, Robert Hickey joined the Washington office and, consequently, did not pay any New York taxes. During all relevant times, the appellants were residents of Bethesda, Maryland and paid their taxes each year to Maryland in full.

On April 14, 1980, the Audit Division of the New York State Tax Department issued a Notice of Deficiency to the Hickeys. The Notice informed the appellants that they were liable for New York State taxes for the period spanning 1976 to 1979. Subsequent Notices informed them that New York was assessing a tax for each year through 1984. On March 28, 1980, the appellants contacted the Income Tax Division of the Maryland Comptroller's Office. They informed the Division of New York's tax assessment, and inquired as to how they should proceed with regard to past, present and future Maryland returns.

Appellants were told that in order to preserve a claim for a refund in the event New York taxes were imposed and sustained, they would have to file a protective return. This consisted of filing a Form 502X on which the words "protective claim" were inserted. They were told that filing a protective return would serve as notification to the Maryland Income Tax division of the claim being made by New York State. Appellants were also told that the Comptroller's office would make no resolution of any claim until the New York dispute had been resolved. Protective returns were filed from April 5, 1980 to April 7, 1985, in accordance with Tax Division instructions.

During this time, appellants challenged New York's deficiency notices. This challenge culminated in a decision by the New York State Court of Appeals essentially affirming the New York State Tax Commission's decision to impose a tax on the appellants. On December 22 and 28, 1986, appellant paid New York State taxes for the years 1976

through 1983 and informed Maryland tax officials of the payment.

On March 31, 1987, appellant contacted the Maryland Income Tax Division regarding the mechanics of filing a claim for a refund of taxes previously paid to the State. At that time, they were told that the Division had lost the protective returns that they had filed, covering the period 1976 to 1981. They were told that in order for their refund claim to be processed, they would have to establish both that they had filed the protective returns and that the Income Tax Division had received them.

Several months later, the appellants successfully established that they had filed the returns and that the Tax Division had received them. In November of 1988, the appellants notified the Division in writing that their litigation in New York over liability for New York taxes had terminated. On November 14, 1988, appellants filed a set of amended returns, setting forth a complete schedule of New York taxes actually paid. In their November 14 correspondence, the Hickeys claimed refunds with interest, based upon credit for the New York taxes. In December, 1988, the State paid appellant the full amount of the claim refund. The Tax Division denied the claim for interest, however, and from that denial the Hickeys appealed to the Tax Court.

The Tax Court held that "the protective claims did not constitute claims for a refund, and that interest did not 'begin to run until the date the appellant filed a claim for refund subsequent to the operative fact,' creating the refund." The Tax Court also held that "interest was barred for the period because the original overpayment of Maryland taxes was due to the mistake or error of the Hickeys in 'claiming that no taxes were due to New York.'"

The appellants appealed the court's decision. The Circuit Court for Montgomery County affirmed the Tax Court's decision, ruling that "as a matter of law a taxpayer is not entitled to a credit for non-Maryland taxes until those taxes

are actually paid," and that "between the period of payment and November, 1988, the Hickeys made no formal, explicit written demand necessary to begin the running of the period for which interest is required." This appeal followed.

Before commencing our discussion, we observe that the appellants' third contention—that failure to pay interest on a refund is unconstitutional—was not raised below. As we have stated time and again, we will not ordinarily decide any point or question which "plainly does not appear by the record to have been raised in or decided by the trial court." Maryland Rule 8–131(a). *See Chertkof v. Dep't of Nat. Resources*, 43 Md.App. 10, 16, 402 A.2d 1315 (1978). Hence, we will not consider appellant's third contention.

## DISCUSSION

At the outset, we note that "all refunds of State taxes are matters of grace with the Legislature." *Comptroller v. Campanella*, 265 Md. 478, 290 A.2d 475 (1972). As the Court of Appeals opined in *Comptroller v. Fairchild Industries*, 303 Md. 280, 284, 493 A.2d 341 (1985), "Entitlement to interest on a tax refund is a matter of grace which can only be authorized by legislative enactment." Hence, the starting point of our analysis is the statutory provisions that establish the conditions under which a taxpayer is entitled to a state income tax refund and interest on that refund. Appellants contend, and we agree, that those provisions are Md.Ann.Code (1980) Art. 81 §§ 290 and 310(c). Section 310(c) was amended by Ch. 421 of the 1986 Session Laws, effective July 1, 1986. It is appellant's contention that the pre–1986 language of Section 310(c) controls the outcome of the instant case. We do not agree.

The critical events in this case transpired after the effective date of the amended Section 310(c). We identify the critical events as: (1) appellants' payment of all tax monies due New York State and (2) appellants' submission to the Maryland Tax Division of a formal, written demand

for payment of the refund claimed to be due. We identify the preceding occurrences as the "critical events" because this result is mandated by the language of Section 290. Section 290 establishes, in essence, that a Maryland State taxpayer is entitled to a refund after that taxpayer has paid taxes to another state. The section provides, in relevant part, that:

"Whenever a resident individual of this State has become liable for income tax to another state upon such part of his net income for the taxable year as is properly subject to taxation in such state, the amount of the income tax payable by him under this subtitle shall be reduced by the amount of the income tax *so paid by him* to such other state upon his *producing to the Comptroller satisfactory evidence of the fact of such payment* ..." (emphasis added).

The appellants here contend that they are entitled to the accrued interest on their income tax refund. That interest only exists, however, in relation to any refund the appellants actually received. Under section 290, a taxpayer is entitled to a refund only where he has done two things: (1) paid the taxes owed to the other state *and* (2) produced to the Comptroller "satisfactory evidence of the fact of such payment." Here, the appellants complied with the first of these requirements in December, 1986, when they paid the taxes owed New York State. They did not comply with the second of the requirements, however, until November 14, 1988, when they submitted a written demand for a refund to the Maryland Tax Division. That this is the type of action that was intended by the General Assembly to constitute "satisfactory evidence" of payment was demonstrated by the Court of Appeals in *Comptroller v. Fairchild Industries*, 303 Md. 280, 493 A.2d 341.

In *Fairchild*, the Court of Appeals analyzed the pre–1986 version of section 310(c), which provides that "interest be paid on refunds 'accounting from the date the return required under this subtitle was due to be filed.'" *Fairchild*, 303 Md. at 289–90, 493 A.2d 341. There the plaintiff-

taxpayer made an argument quite similar to that made by the appellants in the case *sub judice* —that interest on a tax refund produced by an amended return accrues from the date the original return was filed, regardless of the circumstances of the refund claim. *Fairchild,* 303 Md. at 287–88, 493 A.2d 341.

The taxpayer in *Fairchild* was entitled to a refund due to a "net operating loss carryback." This phrase relates to the provisions of the Internal Revenue Code that allow a taxpayer suffering a financial loss to use that loss as a deduction against income produced in preceding years (hence the term "carryback"). *Fairchild,* 303 Md. at 289, 493 A.2d 341. A taxpayer with a net operating loss carryback deduction is entitled to amend his earlier returns, demonstrate the loss deduction, and claim a refund of the tax originally paid. In *Fairchild,* the taxpayer contended that he was entitled to interest on the refund computed from the date the original returns were "due to be filed." *Fairchild,* 303 Md. at 283, 493 A.2d 341. He claimed that to hold otherwise would be to "rewrite the statute to provide that interest should be computed from the date a claim for refund is filed, rather than from the date the return was filed for the year of the refund." *Fairchild,* 303 Md. at 288, 493 A.2d 341.

The Court of Appeals disagreed. It initially noted that the earliest point at which the Comptroller could have paid a refund on the taxpayer's return was after the taxpayer's loss had occurred. It observed that:

"The event which gave rise to the overpayment of Fairchild's 1975, 1976, and 1977 taxes was its net operating loss in 1978—a year subsequent to the year in which the excess taxes were actually paid. Had there been no net operating loss incurred in 1978, there would have been no net operating loss carryback to the three previous years. Before Fairchild incurred net operating losses in 1978, it had no basis for claiming a refund for overpayment of taxes. From the extended due dates of the original returns until the amended returns were filed, the

State was legally entitled to the use and possession of Fairchild's tax payments."

*Fairchild*, 303 Md. at 289, 493 A.2d 341. The Court went on to conclude that:

"The interest provisions contained in Article 81 of the Maryland Code are designed to commence the running of interest from the time that the operative fact arises which entitles a taxpayer or the State to the principal amount in question and for the period that such amounts were held by or subject to the use of the other party.

... *The State had no obligation to pay Fairchild a tax refund, let alone interest on that refund until the later ensuing net operating loss arose and the carryback was claimed.* That the law permits a taxpayer to subsequently carryback a net operating loss and to obtain a refund in no way reflects a taxpayer's right to derive the benefits of the funds during the intervening period.... *interest should be computed from the date the amended return claiming the net operating loss carryback is filed.*" (emphasis added).

*Id.*

The *Fairchild* Court concluded that the State had no duty to pay the taxpayer's refund and any interest thereon, until the taxpayer's *loss was claimed.* The Court equated the term "claimed" with the filing, by the taxpayer, of an explicit, written, demand for payment, setting forth the dollar amount of the refund sought. In the instant case, appellants first made such a formal demand for payment in their November 14, 1988 letter to the Maryland Income Tax Division. It was at that point that the second of the two operative facts of this case occurred. It was at that point that the State was obligated either to comply with the appellants' request or to contest it. Any interest on such refund could only have begun to accrue after that formal claim was made.

 As both of the operative facts in this case plainly arose *subsequent* to the effective date of the amended

version of section 310(c), it is this version which is applicable to the case *sub judice.* That section provides, in relevant part, as follows:

"All claims for a refund of income tax paid pursuant to this subtitle ... shall be certified to the Comptroller ... Interest ... shall be paid on such amounts refunded accounting from the date beginning 45 days after the *filing of the claim ...*" (emphasis added).

As observed earlier, the appellants filed a claim for a refund on November 14, 1988. They were paid the full amount of that claim refund in the last week of December, 1988. Since the appellants were paid within "45 days after the filing of the claim," they were not entitled to any interest thereon, under section 310(c). Consequently, we affirm the trial court's denial of the appellants' claims for interest.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.