487 A.2d 1184

**MPTH ASSOCIATES**

v.

**STATE DEPARTMENT OF ASSESSMENTS AND TAXATION et al.**

**No. 93, Sept. Term, 1984.**

Court of Appeals of Maryland.

Feb. 20, 1985.

Joseph V. Truhe, Jr., Rockville (Miller, Miller & Canby, Rockville, on brief), for appellant.

David M. Tralins, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen. and Kaye Brooks Bushel, Asst. Atty. Gen., Baltimore, on brief), for appellee Department of Assessments and Taxation.

H. Christopher Malone, Sr. Asst. County Atty., Rockville (Paul A. McGuckian, County Atty. and Robert G. Tobin, Jr., Deputy County Atty., Rockville, on brief), for appellee Montgomery County.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

RODOWSKY, Judge.

This is an administrative appeal of a claim for refund of real property taxes. The issue is whether, on the taxpayer's appeal of its assessment for the tax year 1979–80, an increase made in that assessment by an appeal board after the date of finality for tax year 1980–81 applies automatically to tax year 1980–81. For the reasons hereinafter set forth we shall hold that, on these facts, the increase does not apply to 1980–81.

Appellant, MPTH Associates (MPTH), owns a six-story office building in Bethesda. The Supervisor of Assessments for Montgomery County (Supervisor) assessed the property at $704,440 for the tax year beginning July 1, 1979, and ending June 30, 1980, (tax year 1979). MPTH protested this valuation, its protest was denied, and it

appealed to the Property Tax Assessment Appeal Board for Montgomery County (the Board).  The appeal was not decided prior to January 1, 1980, the date of finality for tax year 1980, and the Supervisor did not send any notice to MPTH undertaking to value the property as of the 1980 date of finality.  On July 30, 1980, the Board rendered its decision "REVERSING the ruling of the Supervisor ... with respect to the 1979 assessment" which the Board *increased* to $810,440.[1]  MPTH did not pursue to conclusion an appeal of the Board's order to the Maryland Tax Court. When the Supervisor received a copy of the Board's July 30, 1980, order, he transmitted a form to the Division of Revenue, Department of Finance, for Montgomery County which, in turn, issued a revised tax bill to MPTH for 1980. The 1980 tax bill initially sent to MPTH utilized an assessment of $704,440 but the revised bill was based on $810,440 being the 1980 assessment.  On September 30, 1980, MPTH paid the revised bill in full and on November 25, 1981, it requested a refund which was denied.

MPTH's position is that the 1980 assessment is $704,440 because the Board's increase applied only to 1979.  Consequently, it claims a refund of taxes paid on $106,000 of the assessed valuation used in computing the revised bill.  The taxing authorities contend that the Board's increase was effective for 1980 as well as for 1979.  The Maryland Tax Court agreed with MPTH while the Circuit Court for Montgomery County agreed with the taxing authorities.  After MPTH appealed to the Court of Special Appeals, we issued the writ of certiorari on our own motion.  Both the State Department of Assessments and Taxation (the State) and Montgomery County, Maryland (the County) appealed from the order of the Maryland Tax Court and each is an appellee here.

---

1.  Md. Code (1957, 1980 Repl.Vol.), Art. 81, § 256(a), dealing with appeals to the Maryland Tax Court, refers to increases in an assessment by a property tax assessment appeal board and the Board's power to increase is not questioned in this case.

The taxpayer and the Maryland Tax Court have correctly analyzed the question presented. It turns on a number of provisions of Art. 81 of the Maryland Code.[2] "All real property required by [Art. 81] to be assessed shall be valued at its full cash value on the date of finality." § 14(b)(1)(i). "The phrase *date of finality* ' means the date as of which assessments become final for the taxable year next following, subject only to correction as [in Art. 81] authorized." § 2(20). The date of finality is January 1. § 29A(a). Property taxes are "levied upon assessments made in conformity with [Art. 81], or upon existing assessments until changed in conformity with [Art. 81]." § 7. An assessment of real property, once made, "continue[s] in force from year to year until changed pursuant to the provisions of [Art. 81]." § 14(c). Under these fundamental rules we find that here there was no change in the 1979 assessment as of the 1980 date of finality. Consequently, the original 1979 assessment of $704,440 continued as the assessment for 1980.

The taxing authorities see support in § 214A for their position that the Board's July 30, 1980, increase in the 1979 assessment also increased the assessed valuation for 1980. That section reads:

> Whenever any person shall have appealed from, or petitioned for the reduction of, any assessment, locally determined, for ordinary taxes, a final determination of such appeal or petition providing for a reduction in said assessment shall apply, ipso facto, to any assessment for ordinary taxes locally imposed, at the same valuation as that appealed or petitioned to be reduced, on the same property, made for any tax year which is subsequent to the tax year of the assessment so appealed or petitioned

---

**2.** All references to statutes are to Md. Code (1957, 1980 Repl.Vol.), Art. 81.

This case does not involve the amendments to Art. 81 effected by Ch. 314 of the Acts of 1979 which, *inter alia,* provided for the notice of assessment to reflect the assessment for each year in a cycle of three succeeding years.

to be reduced, for which the date of finality precedes the date of said final determination and for which no notice as to assessments has been sent under § 29(a) of this article.

This statute has no application here, where the assessment was increased on appeal. By its express terms § 214A operates only where either an appeal or a petition for reduction of an assessment has resulted in a final determination "providing for a reduction...." The statute is designed to obviate the need for a taxpayer to file a "protective" appeal for each tax year for which the same assessment continues. Under § 214A the taxpayer of real estate taxes gets the benefit of any reduction effected in the review process not only for the year formally under review but also for succeeding years as to which the assessment has continued.[3]

If a supervisor of assessments believes that the assessment for a year under appeal should be the assessment for the next succeeding year, even if the assessment might be reduced in the review process for the year on appeal, the supervisor may send a notice assessing the property as of the next succeeding January 1 at the same valuation. One of the conditions under which § 214A operates is that the valuation which continues for the succeeding year has not been the subject of a notice of assessment sent under § 29(a). Section 29(a) includes a requirement that a supervisor of assessments send a notice of assessment "whenever a valuation or classification for a given year, or part thereof, has been appealed, but not finally determined, and the same valuation or classification is made for a subsequent year, on property locally assessed...." Section 214A and the above-quoted language from § 29(a) were enacted by Ch. 223 of the Acts of 1961. The two provisions interrelate. A supervisor of assessments can prevent a reduction

---

**3.** The operation of § 214A is illustrated in the background facts reviewed in *Shipp v. Bevard*, 291 Md. 590, 593, 435 A.2d 1114, 1115 (1981).

on appeal from applying to a continuing assessment by reimposing that same assessment for the succeeding year by notice. Of course, a supervisor can always change an assessment for the succeeding year by notice, in which event § 214A does not apply. But § 214A provides no mechanism for automatically making the Board's increase for 1979, ordered July 30, 1980, in this case, also effective for 1980.

The County argues that an interpretation of § 214A which gives the taxpayer the benefit of a reduction in a continuing assessment, but which does not give taxing authorities the benefit of an increase, is an absurd interpretation which is to be avoided. There is no absurdity in the General Assembly's having greatly reduced in 1961 the necessity for *pro forma* protective appeals as to real estate assessments without at the same time making increases during assessment review apply to succeeding years, particularly when the General Assembly in 1961 may have viewed such increases as rare or nonexistent. In any event, we cannot by the process of interpretation add to § 214A a provision embracing increases in assessments when its application is expressly limited to cases of reductions. *See generally Patapsco Trailer Service & Sales, Inc. v. Eastern Freightways, Inc.*, 271 Md. 558, 563–64, 318 A.2d 817, 820 (1974); *Giant of Maryland, Inc. v. State's Att'y*, 267 Md. 501, 512, 298 A.2d 427, 433, *appeal dismissed*, 412 U.S. 915, 93 S.Ct. 2733, 37 L.Ed.2d 141 (1973); *Pressman v. State Tax Comm'n*, 204 Md. 78, 88, 102 A.2d 821, 827 (1954); *State Tax Comm'n v. Potomac Electric Power Co.*, 182 Md. 111, 116, 32 A.2d 382, 384 (1943).

Next, appellees contend that the increase by the Board in the 1979 assessment applies in any event, and without assistance from § 214A, to tax year 1980. Essentially the theory is that the 1979 assessment continued until 1980 and, when the Board increased the 1979 assessment, it thereby increased the 1980 assessment as well because 1980's assessment was merely a continuation of 1979's. In this case the circuit court, in a supplement to its opinion, described

this result as a relation back to January 1, 1980, of the Board's July 30, 1980, increase. This argument fails to give effect to the role of the date of finality in real estate assessments under Art. 81. The theory of the ordinary tax system is that all property is valued as of the date of finality for each tax year. *See, e.g.,* § 14(b)(1)(i) as to real property. The property in this case was assessed at $704,440 as of January 1, 1980, when the 1979 assessment continued as the 1980 assessment in the absence of any notice of reassessment or of any prior revision during the review process.

Statutory authorization beyond the continuing assessment provisions of §§ 7 and 14(c) is required to make an increase in assessment for the tax year under review apply to a later year when the increase is ordered as long after the date of finality for the later year as it was ordered here.[4] This conclusion can be demonstrated by reference to § 214A. In terms of appellee's argument now under consideration, the significance of § 214A is that it overrides the concept that the assessment for each tax year, including a continuing assessment, is a separate assessment as of a separate date of finality. Section 214A makes a reduction effective not only for the year under appeal, but also for years (1) which fall between the year under appeal and the year in which the reduction is ordered, (2) for which no appeal has been taken, and (3) for which the date of finality has already passed. Absent this express statute, and absent protective appeals for each year, a reduction in assessment on appeal would be effective only for the tax year of the initial assessment under appeal. At the same time, and on the same assumptions, the higher original assessment, while reduced for the year under appeal, would be the amount of assessment for each of the intervening years

---

4. We intimate no view of the effect, if any, of § 29(a–1) on the general problem area. That section addresses certain aspects of a "[f]ailure to send a notice of assessment within 30 days after the date of finality...."

under the continuing assessment provisions of §§ 7 and 14(c). Inasmuch as § 214A was required to prevent §§ 7 and 14(c) from applying the assessment initially imposed to intervening, unappealed years when the initial assessment has been later reduced, and inasmuch as § 214A does not address later increases, §§ 7 and 14(c) continue to apply to intervening, unappealed years the amount of assessment initially imposed when the initial assessment has been later increased. Appellees have not directed our attention to any statute other than § 214A which is said automatically to apply an increase on review of a real property assessment to a succeeding tax year for which the date of finality preceded the date of decision in the review process.[5]

Appellees alternatively argue that, even if the 1980 assessment on the subject property is $704,440, MPTH is not entitled to a refund. The argument is that this case has fallen through the cracks because there is no refund statute which applies. Citing *Rapley v. Montgomery County*, 261 Md. 98, 274 A.2d 124 (1971), appellees say that, even if MPTH overpaid, this particular kind of overpayment is not refundable under any statute. The taxpayer contends that it is protected as to the overpayment of state taxes by § 213 and as to county taxes by § 214. We agree with the taxpayer.

Section 213 in relevant part provides:

Whenever any person shall claim to have erroneously or mistakenly paid into the treasury of the State more money for ordinary taxes than was properly and legally chargeable to or collectible from such person he may file with the Comptroller of the State a written demand for

---

**5.** What the assessment would be for the tax year governed by the date of finality next following the order increasing an assessment is not before us. Stated in terms of the facts of the instant case, the reserved question is whether, absent notice of reassessment, the assessment on the subject property for tax year 1981 would be $704,440 because the 1980 assessment continued, or would be $810,440 because the June 30, 1980, Board order had prospective effect.

the refund thereof, which, if approved by the Comptroller, shall be refunded out of any funds appropriated for such purpose.... No refund shall be made, approved or certified in any case where it appears that the assessment upon which such taxes were levied and collected has become final and has not been modified on appeal as provided in this article, and the only basis for the refund is a claim that such assessment was erroneous or excessive; provided, however, that this prohibition shall not apply to any case in which a person has paid a tax bill which is erroneous by reason of any mere mathematical, mechanical or other clerical error by the taxing authority or assessing authority, exclusive of any error of valuation.

Section 214 is similar and no party to this appeal makes any contention based on a claimed difference between the two sections.

Appellees say that these two sections do not apply. Their argument is made both directly against MPTH's claim and by way of asserting that the Maryland Tax Court had no jurisdiction. Appellees say that MPTH claims the 1980 assessment is excessive so that the exclusions in §§ 213 and 214 for failure to appeal an excessive assessment take MPTH out of those statutes.

MPTH never received any notice of an assessment for 1980 in the amount of the increased assessment ordered by the Board for 1979. It had no opportunity to protest or to invoke administrative review in its entirety, beginning with the Supervisor. Further, MPTH does not challenge the assessment for 1980. Its argument is that it should be taxed in accordance with the assessment for 1980 and not in accordance with the assessment for 1979. The revised tax bill paid by MPTH was rendered in an erroneous amount because that amount was computed by utilizing as the 1980 assessment a figure which was not the assessment legally

in effect for the tax year billed. Under these facts the overpayment is subject to refund under §§ 213 and 214.[6]

JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR THE ENTRY OF JUDGMENT AFFIRMING THE MARYLAND TAX COURT. COSTS TO BE PAID BY THE APPELLEES.

---

6. Two days after the entry of judgment in the circuit court MPTH moved for reconsideration. That motion for reconsideration was denied by an order entered eleven days later. Thereafter, and within thirty days from final judgment, MPTH noted an appeal from the "order" of the court. The County asks us to interpret "order" in the notice of appeal as limited to an appeal from the denial of the motion for reconsideration and thereby to limit appellate review to the question of an abuse of discretion by the circuit court. The notice of appeal contains no words limiting it to the denial of the motion for reconsideration. We refuse to torture the language of the notice to produce the effect which the County requests.