521 A.2d 757

**MPTH ASSOCIATES**

v.

**DEPARTMENT OF FINANCE, Montgomery County, MD.**

No. 64, Sept. Term, 1986.

Court of Appeals of Maryland.

March 5, 1987.

Joseph V. Truhe, Jr. (Miller, Miller & Canby, on the brief), Rockville, for appellant.

H. Christopher Malone, Sr. Asst. Co. Atty. (Paul A. McGuckian, Co. Atty., on the brief), Rockville, for appellee.

Argued Before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH, McAULIFFE and ADKINS, JJ.

ADKINS, Judge.

In *MPTH Assoc. v. State Dept. of Assess.* (*MPTH I*), 302 Md. 319, 487 A.2d 1184 (1985), we decided that MPTH was entitled to a refund of an overpayment of real estate taxes. The same appellant is before us again, this time seeking interest on the refund. And this time we shall affirm the Circuit Court for Montgomery County's denial of the relief sought by MPTH.

The factual background is recounted in *MPTH I.* The Montgomery County Supervisor of Assessments assessed MPTH's property at $704,440 for the 1979 tax year. MPTH appealed the assessment to the county Property Tax Assessment Appeal Board, which eventually increased the assessment to $810,440. That action did not occur, however, until after the date of finality for tax year 1980. In fact, the supervisor did not send MPTH any notice undertaking to value the property as of the 1980 date of finality. What was sent MPTH was a 1980 tax bill based on an assessment of $810,440. MPTH paid that bill and then requested a refund, claiming that the 1980 assessment should have been $704,440, because the higher assessment reflected in the bill applied only to tax year 1979.

We agreed with MPTH. Judge Rodowsky explained for the Court that "there was no change in the 1979 assessment as of the 1980 date of finality." 302 Md. at 322, 487 A.2d at 1186. In the absence of timely notice from the supervisor of a 1980 increase, the Property Tax Assessment Appeal Board's post-date-of-finality increased assessment applied only to tax year 1979. *Id.* at 324–26, 487 A.2d at 1187–88. We further held that MPTH was entitled to a refund under §§ 213 and 214 of Art. 81 of the Md.Code. *Id.* at 327–28, 487 A.2d at 1188–89.

Thus MPTH obtained its refund, but the refund was paid without interest. Aggrieved by that lack, MPTH filed a declaratory judgment action in the Circuit Court for Montgomery County, requesting a declaration that it was entitled to interest. Judge Beard granted summary judgment

for appellee, the Department of Finance for Montgomery County. He declared that MPTH "is not entitled to interest on a refund of real property taxes under Sections 213 and 214, Article 81. . . ." MPTH appealed to the Court of Special Appeals; we granted *certiorari* while the case was still pending in that court. 306 Md. 555, 510 A.2d 561 (1986).

Before us MPTH concedes that ordinarily, absent statutory authorization, no interest is payable on a refund of taxes voluntarily overpaid. It insists, however, that its overpayment was involuntary because the levy and collection of real property taxes are not subject to stay or injunction. When taxes are overpaid involuntarily, it contends, a refund carries interest despite the absence of any statutory provision for it. Finally, it points to Art. 81, § 261, which allows interest on a refund ordered after a taxpayer's successful appeal of an assessment pursuant to §§ 255 and 256. According to MPTH, it was "unlawfully deprived of the opportunity to challenge" the 1980 assessment via the latter sections because it did not receive timely notice of the 1980 assessment. Hence, it should have the benefit of the § 261 refund provision whether it made the overpayment voluntarily or involuntarily.

In light of our analysis of this case we need not consider MPTH's arguments based on the elusive and perhaps chimerical involuntary payment of taxes theory. Nor can MPTH derive support from § 261. When it responded to the 1980 tax bill, the only route available to it for administrative relief was that provided by §§ 213 and 214. Moreover, as we shall now explain, that those sections are applicable to the claim for interest on the refund is now the law of the case.

## I

In *MPTH I*, MPTH's claim for refund was filed pursuant to Art. 81, §§ 213 and 214. Before us in that case the appellees argued that those sections were inapplicable.

MPTH strongly contended for the opposite result. For example, it asserted:

> "It can hardly be made more clear that Sections 213 and 214 only preclude resort to their provisions when an assessment is challenged as being erroneous by virtue of an error in valuation or on some other ground that could properly have been raised in the appeal process set forth in sections 255, et seq. Where, as in this case, the assessment of $810,440.00 is being challenged on the ground that it is not the 1980 assessment and that the collecting authority has improperly issued a bill predicated upon the wrong assessment, the claim for refund falls squarely within the express language of [§§ 213 and 214]."

MPTH's reply brief in *MPTH I* at 7.

> As we have seen, MPTH won this argument. We said: "The taxpayer [MPTH] contends that it is protected as to the overpayment of state taxes by § 213 and as to county taxes by § 214. We agree with the taxpayer."

*MPTH I,* 302 Md. at 326, 487 A.2d at 1188. And we held that "[u]nder these facts the overpayment is subject to refund under §§ 213 and 214." *Id.* at 328, 487 A.2d at 1189 [footnote omitted].

▆ Thus, it is now the law of this case that §§ 213 and 214 govern. The entitlement to interest that MPTH now asserts must be founded on those sections. "Once this Court has ruled upon a question properly presented on an appeal, ... such a ruling becomes the 'law of the case' and is binding on the litigants and courts alike...." *Fid-Balto. Bank v. John Hancock,* 217 Md. 367, 372, 142 A.2d 796, 798 (1958).

For this reason, it does not matter whether MPTH's payment of the taxes was voluntary or involuntary. MPTH has persuaded us that its refund was properly obtainable under §§ 213 and 214. Its right to interest must depend on those same sections. It is to them we now turn.

## II

■ Before turning to the language of §§ 213 and 214, it is helpful to recall that in Maryland refunds of taxes are generally "matters of grace with the Legislature." *Wasena Housing Corp. v. Levay*, 188 Md. 383, 389, 52 A.2d 903, 906 (1947); *see also Apostol v. Anne Arundel County*, 288 Md. 667, 672, 421 A.2d 582, 585 (1980) (when taxpayer voluntarily pays a tax under mistake of law or allegedly illegal imposition, no common law action lies for recovery of the tax absent a special statutory provision for refund); and *Rapley v. Montgomery County*, 261 Md. 98, 274 A.2d 124 (1971). More specifically, "[e]ntitlement to interest on a tax refund is a matter of grace which can only be authorized by legislative enactment." *Comptroller v. Fairchild Industries*, 303 Md. 280, 284, 493 A.2d 341, 342–43 (1985); *see Comptroller v. Campanella*, 265 Md. 478, 290 A.2d 475 (1972); *Lady v. Prince George's County*, 43 Md.App. 99, 403 A.2d 1277 (1979). The question is whether the legislature intended a refund to be accompanied by interest, and that intent is primarily to be ascertained from "the language of the statute itself which should be construed according to its ordinary and natural import." *Fairchild Industries*, 303 Md. at 284, 493 A.2d at 343.

Section 213 deals with refunds of State taxes and § 214 with refunds of county, municipal, or Baltimore City taxes. In pertinent part, they provide:

"§ 213

"Whenever any person shall claim to have erroneously or mistakenly paid into the treasury of the State more money for ordinary taxes than was properly and legally chargeable to or collectible from such person he may file with the Comptroller of the State a written demand *for the refund thereof* which, if approved by the Comptroller, shall be refunded out of any funds appropriated for such purpose, or, if no such funds are available, shall be certified to the Governor for inclusion in the next budget...

"§ 214

"(a) Whenever any person shall claim to have erroneously or mistakenly paid to the county commissioners of any county, or to the collector for such county, or to the collector or other official of any municipality, or to the Mayor and City Council of Baltimore, or the collector for Baltimore City, more money for ordinary ... taxes than was properly and legally chargeable to or collectible from such person, he may file with the collector in any county or municipality or the appeal tax court in Baltimore City, a written application for the refund thereof, and if approved by such collector, or the said appeal tax court the said county commissioners or the said municipal officials or the Mayor and City Council of Baltimore shall levy and pay to such person *any money that was so paid* ...*"* [emphasis supplied].

The language of those sections is clear. What is to be paid back is a "refund thereof" (*i.e.* of the taxes overpaid) under § 213 and "any money that was so paid" (*i.e.* the taxes overpaid) under § 214. There is no mention of interest on either of those amounts.

This statutory silence as to interest might well be sufficient to end the inquiry. There simply is no suggestion that anything beyond the actual taxes paid is to be refunded. But if more is required, it may be found by taking a more extended look at the tax laws. As Judge Wilner pointed out in *Lady*, §§ 213 and 214 had their modern genesis in an extensive recodification and revision of the tax laws accomplished by Ch. 226, 1929 Md.Laws 621–726, pursuant to the recommendations of the Tax Revision Commission. 43 Md. App. at 103, 403 A.2d at 1280. Also included in that recodification and revision was the predecessor of § 261 which expressly allows a refund plus interest with respect to certain types of tax controversies. As Judge Wilner observed:

"Because it [Ch. 226] was a comprehensive treatment and not a collection of piece-meal amendments, differences in language used in similar or analogous contexts are especially significant as an indication of legislative intent.

There is, in other words, less chance of language differences—insertions here and omissions there—being merely the product of the draftsman's style and whim and more chance that they are truly expressive of deliberate legislative policy."

43 Md.App. at 104–105, 403 A.2d at 1280.

In the 1929 enactment, the predecessors to §§ 213 and 214, like §§ 213–214 themselves, contained no reference to interest on a refund. The predecessor to § 261 did. *See* 1929 Md.Laws 707–08, § 188. That is surely an indication of legislative intent, for it shows that the General Assembly knew how to provide for interest on refunds when it wished to do so. *Compare* Art. 81, § 218 (not part of the 1929 revision) which expressly provides for interest on refunds of special (as opposed to ordinary) taxes.

■ Why the legislature treated these refund provisions differently is not important for present purposes, although Judge Wilner suggests a possible reason for the variations between §§ 213 and 214 on the one hand and § 261 on the other. *See Lady,* 43 Md.App. at 105–106, 403 A.2d at 1281 (distinguishing between disputes over assessment, valuation, and classification of property on the one hand, and voluntary overpayment of the tax itself on the other). The fact is that the legislature did use different language and that is strong evidence of deliberate intent. Courts in other states are divided on the availability of interest on a refund absent express statutory authorization. *See* Annotation, *Right to interest on tax refund or credit in absence of specific controlling statute,* 88 A.L.R.2d 823 (1963). But given the strict Maryland approach to tax refunds in general, and the explicit language in *Fairchild Industries* that we have earlier quoted, we hold that §§ 213 and 214 manifest a legislative intent that no interest is allowed on refunds made under their provisions.[1] Accordingly, we

---

1. Throughout this opinion we have referred to §§ 213, 214, and certain other portions of Art. 81 as they stood prior to the enactment

affirm the judgment of the Circuit Court for Montgomery County.

JUDGMENT AFFIRMED. APPELLANT TO PAY THE COSTS.

---

of Ch. 8, 1985 Md.Laws 40–616, effective 1 February 1986, a code revision bill. The former Art. 81 provisions are those that were before us in *MPTH I,* and before the trial court in this case. They are the provisions cited by the parties in their briefs. The analogous provisions are now found in the Tax-Property Article in the following locations:

| Art. 81 | Tax-Property Art. |
|---|---|
| § 213 | § 14–904 |
| § 214 (a) | § 14–905 |
| § 218—remains as Art. 81, § 218 | |
| §§ 255–256 | §§ 14–502, 14–503, 14–507, 14–509 through 14–512 |
| § 260 | § 14–514 |
| § 261—remains as Art. 81, § 261 | |

---

Title 14 of the Tax-Property Art. is entitled "Procedure." The provisions relied on in *MPTH I,* §§ 213 and 214, now can be found together with the former special taxes sections under Subtitle 9, "Abatements, Credits, and Refunds." The code revisors, in their efforts to clarify the law, coalesced the provisions for payment of and interest on taxes overpaid, whether ordinary or special, into §§ 14–916 and 14–917. Those sections provide for the payment of interest on certain claims only, and not on claims made under §§ 14–904 and 14–905. By enacting these provisions, the legislature has confirmed that it did not intend to permit interest on refunds made under the provisions at issue in the present case.