950 A.2d 766

**COMPTROLLER OF the TREASURY**

v.

**SCIENCE APPLICATIONS INTERNATIONAL CORPORATION.**

No. 101, Sept. Term, 2007.

Court of Appeals of Maryland.

June 16, 2008.

**188**

Gerald Langbaum, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, John K. Barry, Asst. Atty. Gen., Annapolis), on brief, for appellant.

Eric J. Coffill (Morrison & Foerster, LLP, Sacramento, CA; Harry D. Shapiro of Saul Ewing, LLP, Baltimore), on brief, for appellee.

Argued before BELL, C.J.,* RAKER, HARRELL, BATTAGLIA, GREENE, MURPHY and DALE R. CATHELL (Retired, specially assigned), JJ.

---

* Raker, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursu-

RAKER, J.

The primary issue we must decide in this appeal, filed by the Comptroller of the Treasury, is whether the Tax Court erred in requiring the Comptroller to pay interest on a tax refund to Science Applications International Corporation (SAIC). The Comptroller also raises a jurisdictional challenge to the Tax Court's review of the Comptroller's disallowance of SAIC's refund claim for interest. We shall hold that the Tax Court has jurisdiction to hear a claim for interest on a refund, and, on the merits, because the Tax Court committed no errors of law and its conclusions were supported by substantial evidence, we shall affirm.

## I.

On or about October 15, 2000, Appellee, SAIC filed its Maryland corporation income tax return for the fiscal year beginning February 1, 1999 and ending January 31, 2000. SAIC reported that it owed $4,216,431. Because SAIC had previously remitted estimated tax payments of $4,901,759, the return reflected a refund of $685,328, which the State paid in a timely manner. Three years later, on October 14, 2003, SAIC amended its 1999 return. The amendment claimed a further refund of $4,274,519 based on the argument that a gain from the sale of shares of stock of Network Solutions, Inc. (NSI), which SAIC had held for investment purposes, lacked a sufficient nexus to Maryland for the gain to be taxable under the United States Constitution and Maryland law. *See Hercules v. Comptroller,* 351 Md. 101, 109, 716 A.2d 276, 279–80 (1998). SAIC had included the gain on NSI stock on its original return. By amending its 1999 tax return to eliminate the $715,850,753 gain on the sale of NSI stock, SAIC reduced its Maryland income tax liability for the tax year to zero and claimed a refund of the full amount of taxes that it had previously paid. The entire $4,274,519 claim for refund represents Maryland income tax paid by SAIC to the Comptroller

---

ant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

attributable to SAIC's capital gain of $715,850,753 realized on SAIC's sale of its NSI stock.

The Comptroller denied SAIC's claim for refund by letter dated December 18, 2003, based on the Comptroller's determination that a portion of the NSI gain was taxable in Maryland. Following an informal hearing, pursuant to § 13–510 of the Tax–General Article, Maryland Code (1988, 2004 Repl. Vol.),[1] the Comptroller issued a Notice of Final Determination denying SAIC's refund claim on October 5, 2004.

SAIC filed a petition of appeal in the Maryland Tax Court, contesting the Comptroller's denial of its claim for a refund. After an evidentiary hearing, the Tax Court reversed the decision of the Comptroller's denial of SAIC's claim for a refund, based on the Tax Court's finding that there was no nexus between SAIC's capital gain of the stock sale and the State of Maryland. The Comptroller did not seek judicial review of the Tax Court's refund decision and paid to SAIC the full amount of the refund.

SAIC filed a motion in the Tax Court to compel the Comptroller to pay interest on the refund. The Tax Court ruled in favor of SAIC, holding that interest was due on the refund from the time that SAIC filed the claim for refund and the time that the Comptroller's office paid the refund, and that no interest on the interest was due.

The Comptroller filed a petition for judicial review in the Circuit Court for Baltimore City.[2] The Circuit Court affirmed the Tax Court.

---

1. Unless otherwise noted, hereinafter all statutory references will be to the Tax–General Article, Maryland Code (1988, 2004 Repl. Vol.).

2. Science Applications International Corporation (SAIC) filed a cross-appeal in the Circuit Court. SAIC had argued before the Tax Court that they were due interest on the interest, analogizing to an IRS administrative case that had awarded interest on the interest in a deficiency proceeding. The Tax Court rejected the claim and awarded interest only for the time period between the refund claim and when the Comptroller issued the refund. The Circuit Court similarly rejected SAIC's analogy, holding that there was no statutory provision for interest on the interest. SAIC does not appeal that decision.

The Comptroller noted a timely appeal to the Court of Special Appeals. This Court granted certiorari on its own initiative prior to any decision of the intermediate appellate court to consider whether the Tax Court erred in exercising jurisdiction to hear and decide SAIC's motion to compel payment of interest, whether SAIC's motion was barred by *res judicata,* and whether the Tax Court erred in requiring the Comptroller to pay interest on the refund due to SAIC. *Comptroller v. Science Applications,* 402 Md. 355, 936 A.2d 852 (2007).

## II.

Before this Court, the Comptroller argues that SAIC's claim for interest was barred by *res judicata* because SAIC failed to raise the issue of interest on the refund in its original petition in the Maryland Tax Court. He maintains that the Tax Court does not have jurisdiction to compel payment of interest on a refund because § 3–103(a) and § 13–510(a) do not mention interest on the refund. Finally, the Comptroller argues that SAIC's refund claim fits into an exception to § 13–603's general provision for interest on the refund, which reads, in pertinent part, as follows:

"(b) Exceptions.—A tax collector may not pay interest on a refund if the claim for refund is:

\* \* \*

(2) based on:
(i) an error or mistake of the claimant not attributable to the State or a unit of the State government . . ."

It is the Comptroller's position that § 13–603 precludes granting interest on a refund that was made due to an error by the taxpayer. The Comptroller contends that SAIC made a mistake on its original tax return filing that could not be "attributable to the State" because the Comptroller did not compel SAIC by assessment or any active involvement with the original filing. He objects primarily to the Tax Court's application of *DeBois Textiles v. Comptroller,* 1985 WL 6117 (1985),

where the Tax Court stated "an error is attributable to the State when a taxpayer, using reasonable judgment under the circumstances, is led by the laws, regulations, or policies expressed by the State to the mistaken conclusion that the tax is owed." The Comptroller argues that the Tax Court erred as a matter of law in using the *DeBois* standard and that the Tax Court's finding that SAIC's mistake was "attributable to the State" was not supported by substantial evidence.

Appellee, SAIC, counters that the doctrine of *res judicata* is inapplicable in this case because there is no second action— the motion to compel interest on the refund arises out of the enforcement of the Tax Court's order reversing the Comptroller's denial of a refund. SAIC further contends that the Tax Court had jurisdiction to compel interest on the refund because there is a direct relationship between refunds and interest on those refunds, and the Tax Court is explicitly granted jurisdiction over the denial of a refund. Appellee contends that interest on the refund was mandated by § 13–603 because any error made by SAIC was attributable to the State.

### III.

When reviewing the decision of an administrative agency, such as the Tax Court,[3] we review the agency's decision directly, not the decision of the circuit court. *Anderson v. General Casualty*, 402 Md. 236, 244, 935 A.2d 746, 751 (2007). A reviewing court will affirm the decision of the Tax Court when it is supported by substantial evidence appearing in the record and it is not erroneous as a matter of law. *Comptroller v. Blanton*, 390 Md. 528, 535, 890 A.2d 279, 283 (2006); *Ramsay, Scarlett & Co. v. Comptroller*, 302 Md. 825, 834, 490 A.2d 1296, 1300–01 (1985). Because an agency's decision is presumed *prima facie* correct, we review the evidence in the light most favorable to the agency. *Comptrol-*

---

**3.** The Tax Court, despite its name, is an administrative body. *See* § 3–102, *Harford County v. Saks*, 399 Md. 73, 88 n. 14, 923 A.2d 1, 10 n. 14 (2007).

ler v. Citicorp, 389 Md. 156, 163, 884 A.2d 112, 116 (2005). Indeed, "it is the agency's province to resolve conflicting evidence and where inconsistent inferences can be drawn from the same evidence it is for the agency to draw the inferences." *Id.* at 163–64, 884 A.2d at 116 (quoting *Ramsay,* 302 Md. at 835, 490 A.2d at 1301). When we review an agency decision that is a mixed question of law and fact, we apply "the substantial evidence test, that is, the same standard of review it would apply to an agency factual finding." *Longshore v. State,* 399 Md. 486, 522 n. 8, 924 A.2d 1129, 1149 n. 8 (2007).

## IV.

■ We consider first the Comptroller's jurisdictional argument. The Comptroller argues that the Tax Court lacked jurisdiction to hear SAIC's claim for a refund of interest because the agency's statutory jurisdiction does not extend to interest claims.

The Maryland Tax Court is established by § 3–102 which states as follows:

"There is a Maryland Tax Court, which is an independent administrative unit of the State government."

The Tax Court's subject matter jurisdiction is governed by § 3–103(a), which states as follows:

"(a) *In general.*—The Tax Court has jurisdiction to hear appeals from the final decision, final determination, or final order of a property tax assessment appeal board or any other unit of the State government or of a political subdivision of the State that is authorized to make the final decision or determination or issue the final order about any tax issue, including:

(1) the valuation, assessment, or classification of property;

(2) the imposition of a tax;

(3) the determination of a claim for refund;

(4) the application for an abatement, reduction, or revision of any assessment or tax; or

(5) the application for an exemption from any assessment or tax."

Section 13–510(a) delineates specific decisions that are appealable to the Tax Court, and provides, in pertinent part, as follows:

"(a) *In general*—Except as provided in subsection (b) of this section and subject to § 13–514 of this subtitle, within 30 days after the date on which a notice is mailed, a person or governmental unit that is aggrieved by the action in the notice may appeal to the Tax Court from:

(1) a final assessment of tax, interest, or penalty under this article;

(2) a final determination on an application for revision or claim for refund under § 13–508 of this subtitle;

(3) an inheritance tax determination by a register or by an orphans' court other than a circuit court sitting as an orphans' court;

(4) a denial of an alternative payment schedule for inheritance tax or Maryland estate tax;

(5) a final determination on a claim for return of seized property under § 13–839 or § 13–840 of this title; or

(6) a disallowance of a claim for refund under § 13–904 of this title."

The Tax Court ruled that the Comptroller was required to pay interest on the refund, based upon § 13–603(a), "Interest on refunds." The Tax Court reasoned as follows:

"A consideration of both statutes [Section 3–103 and Section 13–603] when read together make it clear that there is a direct relationship between tax refunds and interest on refunds. In the result of that relationship, it is clear that the issues regarding refunds and interest on refunds are certainly within the jurisdiction of this Court."

Section 13–603 reads, in pertinent part, as follows:

"(a) *In general.*—Except as otherwise provided in this section, if a claim for refund under § 13–901(a)(1) or (2) or (d)(1)(i) or (2) of this title is approved, the tax collector shall

pay interest on the refund from the 45th day after the claim is filed in the manner required in Subtitle 9 of this title to the date on which the refund is paid.

"(b) *Exceptions.*—A tax collector may not pay interest on a refund if the claim for refund is:

(1) made under any provision other than § 13–901(a)(1) or (2) or (d)(1)(i) or (2) of this title;

(2) based on:

 (i) an error or mistake of the claimant not attributable to the State or a unit of the State government;

 (ii) withholding excess income tax;

 (iii) an overpayment of estimated financial institution franchise tax or estimated income tax; or

 (iv) an overpayment of Maryland estate tax based on an inheritance tax payment made after payment of Maryland estate tax; . . . ."

As the Tax Court noted, there is a direct relationship between the determination of whether a refund was denied properly and whether interest is due on the refund. Because the question of interest on the refund is part of the inquiry resulting from an appeal of disallowance of a claim for refund, the Tax Court had jurisdiction to consider the interest issue, and, therefore, did not err as a matter of law in finding that it had jurisdiction to decide SAIC's motion.

We turn to the Comptroller's argument that SAIC is barred by the doctrine of *res judicata* from raising its claim for interest on the refund. The doctrine of *res judicata* has been described as follows:

"The doctrine of claim preclusion, or *res judicata,* 'bars the relitigation of a claim if there is a final judgment in a previous litigation where the parties, the subject matter and causes of action are identical or substantially identical as to issues actually litigated and as to those which could have or should have been raised in the previous litigation.' The doctrine embodies three elements: (1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the

current action is identical to that determined or that which could have been raised and determined in the prior litigation; and (3) there was a final judgment on the merits in the prior litigation."

*R & D 2001 v. Rice*, 402 Md. 648, 663, 938 A.2d 839, 848 (2008) (citations omitted).

The Comptroller's argument that *res judicata* bars SAIC's claim is based upon his view that SAIC's motion to compel payment of interest is an impermissible second action because SAIC did not seek interest explicitly in its initial petition to the Tax Court when it first sought the refund, and, therefore, it is barred from seeking the interest. Both the Tax Court and the Circuit Court rejected the Comptroller's argument, as does this Court.

*Res judicata* "bars the relitigation of a claim if there is a final judgment in a previous litigation where the parties, the subject matter and causes of action are identical or substantially identical as to issues actually litigated and as to those which could have or should have been raised in the previous litigation." *Board of Ed. v. Norville*, 390 Md. 93, 106–107, 887 A.2d 1029, 1037 (2005). The Tax Court ruled on this issue as follows:

> "It is true that the case at bar has been litigated to its conclusion. The motion by Petitioner, however, to compel interest on a refund ... arises from and is directly related to the enforcement of the May 11, 2006 Order whereby this Court reversed the Comptroller's denial of the corporation's claim for refund of corporate income taxes."

The Circuit Court ruled also that SAIC's claim was not barred by *res judicata*. The Circuit Court reasoned that the claim for interest could not have been litigated with the original claim for refund because it grew out of an attempt to enforce the May 11, 2006 order, the order requiring the refund, and that the interest claim is directly related to the claim for the refund and not a separate claim.

■ We hold that SAIC's Motion to Compel Payment of Interest on the refund was not barred by the principle of *res*

*judicata.* The claim was not a second claim or a second proceeding as contemplated by *res judicata* principles. Interest, under § 13–603, must be paid, as a matter of law, on the refund, unless a statutory exception applies. Therefore, if a refund is granted, interest "shall" be paid to the successful claimant when the claim does not fall within an exception, even if that claimant did not request the interest in the original claim for a refund. SAIC could not have known that it needed to litigate the possibility of denial of interest on the refund when it believed it was entitled to that interest, and, thus, believed it would receive the interest along with the refund in accordance with the statute. SAIC's Motion to Compel Payment of Interest on the refund is not barred by *res judicata.*

### V.

We turn to the merits of this appeal and consider whether the Tax Court erred in ordering the Comptroller to pay interest on the refund under the provisions of § 13–603(b). If the claim for a refund is based on "an error or mistake of the claimant not attributable to the State or a unit of the State government," the Comptroller is prohibited by statute from paying interest on the refund. § 13–603(b). The Tax Court ruled that interest was due on the refund, stating as follows:

> "[SAIC] used reasonable judgment under the circumstances, was led by the laws, regulations, or policies expressed by the State to the mistaken conclusion that tax was owed. Thus, [SAIC's] mistake was attributable to the State, and Section 13–603(a) mandates that interest be paid on the refund."

The Comptroller contends that the Tax Court erred in its interpretation of § 13–603 because the phrase "attributable to the State" only encompasses "an assessment of tax or other affirmative action." The Comptroller argues also that the Tax Court's conclusion that SAIC's mistake was attributable to the State was not supported by the evidence.

Section 13–603 controls interest on tax refunds in Maryland. Tax refunds in Maryland are "matters of grace

with the Legislature." *MPTH Associates v. Dep't of Finance,* 308 Md. 674, 679, 521 A.2d 757, 759 (1987). A taxpayer's entitlement to interest on a refund can be authorized only by legislative enactment. *Comptroller v. Fairchild Industries,* 303 Md. 280, 284, 493 A.2d 341, 342–43 (1985); *Comptroller v. Campanella,* 265 Md. 478, 487, 290 A.2d 475, 479 (1972). When this Court interprets a statute, our purpose is to effectuate the intent of the Legislature, and, in order to discern that intent, we look first to the plain meaning of the statute's language. *Ishola v. State,* 404 Md. 155, 160, 945 A.2d 1273, 1276 (2008). "The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the Legislature. Statutory construction begins with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology." *Bowen v. City of Annapolis,* 402 Md. 587, 613, 937 A.2d 242, 257 (2007) (quoting *Kushell v. Dep't of Natural Res.,* 385 Md. 563, 576–78, 870 A.2d 186, 193–94 (2005)). The statute must be read so that no word, clause, sentence, or phrase is rendered superfluous or nugatory. *Tribbitt v. State,* 403 Md. 638, 646, 943 A.2d 1260, 1264 (2008). If the plain language of a statute is clear and unambiguous, we look no further because there is no "need to resort to the various, and sometimes inconsistent, external rules of construction, for the Legislature is presumed to have meant what it said and said what it meant." *Id.* (internal quotation omitted); *Arundel Corp. v. Marie,* 383 Md. 489, 502, 860 A.2d 886, 894 (2004). If, however, the statutory language is "subject to more than one interpretation, it is ambiguous, and we resolve that ambiguity by looking to the statute's legislative history, case law, and statutory purpose." *Opert v. Criminal Injuries Board,* 403 Md. 587, 593, 943 A.2d 1229, 1233 (2008).

With these principles in mind, we turn to an examination of § 13–603's plain language. Section 13–603 provides that "the tax collector shall pay interest on the refund from the 45th day after the claim is filed . . . to the date on which the refund is paid." Exceptions to this general duty to pay interest on a refund are enumerated in § 13–603(b), including "an error or mistake of the claimant not attributable to the State or a unit

of the State government." § 13–603(b). For this exception to apply to a refund claim, the claim must satisfy two elements: 1) it must be an error or mistake of the claimant, *and* 2) it must not be attributable to the State or a unit of the State government. If a claim does not meet one of those two elements, *i.e.*, it is not an error of the claimant or it is an error attributable to the State, interest on the refund must be paid.

Considering the plain meaning of § 13–603's predecessor statute,[4] we have said "the General Assembly intended that interest be paid on refunds unless the overpayment was due solely to taxpayer mistake or error." *Comptroller v. Fairchild Industries*, 303 Md. 280, 286, 493 A.2d 341, 344 (1985) (emphasis in original). *Fairchild* involved a statutory provision which allowed a net operating loss "carryback." Fairchild sustained a net operating loss that was used as a retroactive income tax deduction under the "carryback" provision to amend its corporate tax refunds for the three previous years and resulted in a refund in each of those three previous years. *Id.* at 283, 493 A.2d at 342. This Court held that

---

4. The relevant statute in *Comptroller v. Fairchild Industries*, 303 Md. 280, 493 A.2d 341(1985), was Art. 81, § 310(c), Md. Code (1957, 1980 Repl. Vol.). Section 310(c) provided, in pertinent part, as follows:

"[I]nterest may not be paid on tax refunds now pending or subsequently filed pursuant to this section if the tax originally paid was paid in whole or in part by reason of a mistake or error on the part of the taxpayer and not attributable to the State or any department or agency thereof. . . ."

The current language, "[a] tax collector may not pay interest on a refund if the claim for refund is . . . based on . . . an error or mistake of the claimant not attributable to the State or a unit of the State government," was enacted by ch. 2, Md. Laws 1988. That Act created the Tax–General Article and was a comprehensive re-enactment of the general tax code. The Revisor's Note provides that § 13–603(b) was "new language derived without substantive change" from Art. 81, § 310(c), Md. Code (1957, 1980 Repl. Vol.). A comparison of the plain language of the two statutes confirms that there was no substantive change that could affect the interpretation of the portion of the statute at issue here. Both statutes require the presence of a mistake and that that mistake is not attributable to the State—while the revised language omits the "and," a conjunction of the two elements is still present because "not attributable to the State . . ." modifies the phrase "an error or mistake of the claimant."

Fairchild's amendment of its corporate returns under the "carryback" provision was not a taxpayer mistake and Fairchild was entitled to interest on the refunds. *Id.* at 286–87, 493 A.2d at 344.

In *Davidson*, the executors of an estate filed an initial tax return with both the Federal government and the State of Maryland. *Comptroller v. Davidson*, 234 Md. 269, 270, 199 A.2d 360, 360 (1964). After an audit of the Federal return resulted in an increase of the gross amount included in the estate, and an agreement with the Attorney General of Maryland stating that the executors would be entitled to a refund of any overpayment of Maryland estate tax pursuant to statute, the executors filed an amended return and paid additional taxes to settle their final distribution account. *Id.* at 271, 199 A.2d at 360. A second amended return reflected an overpayment of Maryland estate tax. *Id.* The Comptroller agreed that a refund in the amount reflected on the amended return was due, but declined to pay interest on the overpayment. *Id.* This Court held that interest was due on the refund because of the provisions governing refund interest for Maryland estate taxes. We considered also the statutory equivalent of § 13–603, Art. 81, § 218, Md. Code (1957, 1963 Cum. Supp.) in dicta,[5] stating as follows:

> "It is perfectly clear, we think, that there was no mistake or error on the part of the executors. Payment of the Maryland estate tax was expressly required when the Federal estate tax was paid. Hence the exception cannot apply, and interest on the refund is required upon any theory of the case."

*Davidson*, 234 Md. at 273, 199 A.2d at 361–62.

*Fairchild* and *Davidson* establish that in some cases, refunds are due by operation of law, and in such cases, a

---

**5.** The *Davidson* Court preceded the discussion of § 218, Md. Code (1957, 1963 Cum. Supp.) with the following caveat:

> "But if we assume, without deciding, that resort to sec. 218, might have been permissible, or even required, we think the Comptroller could not prevail."

*Davidson*, 234 Md. 269, 272–73, 199 A.2d 360, 361 (1964).

claimant makes no mistake or error in filing for a refund claim. Where there is no error or mistake on the part of the claimant, and no other exception applies, interest on the refund amount is due under § 13–603. This conclusion, however, does not dispose of the case *sub judice* because both parties agree that the payment was "erroneous" under § 13–901(a)(1).[6] Whether SAIC's request for interest on the refund is successful therefore hinges on the interpretation of the second prong of § 13–603(b)(2)—what makes an error or mistake "attributable to the State"?

To answer this question, the Tax Court applied a standard it first articulated in *DeBois Textiles Int'l v. Comptroller,* Income Tax No. 1630, 1985 WL 6117, (Md.Tax, Aug. 23, 1985). In that case the claimant, DeBois Textiles, was entitled to apportion part of its income outside of the State of Maryland pursuant to its status as a domestic international sales corporation (DISC). *Id.* at * 1. Originally DeBois paid tax on 100% of its income, but later filed an amended return seeking a refund. *Id.* The Comptroller denied that request, and, after DeBois appealed to the Tax Court, the parties entered into a settlement agreement under which DeBois obtained a partial refund of $44,728.36. *Id.* DeBois then sought to compel payment of interest on the refund pursuant to Md. Code, Article 81, § 310(c) (1951, 1980 Repl. Vol.). *DeBois,* 1985 WL 6117, at *1. The Tax Court stated that "[a]n error is attributable to the State when a taxpayer using reasonable judgment under the circumstances is led by the laws, regulations, or policies expressed by the State to the mistaken conclusion that tax is owed." *Id.* The Tax Court applied this standard to DeBois, finding as follows:

> "In the instant case, Petitioner's error consisted of its belief that DISCs filing Maryland income tax returns must report and pay tax on 100% of their income. This false impression

---

**6.** Section 13–901(a) reads, in pertinent part, as follows:

> "a) *In general.*—A claim for refund may be filed with the tax collector who collects the tax, fee, or charge by a claimant who: "(1) erroneously pays to the State a greater amount of tax, fee, charge, interest, or penalty than is properly and legally payable."

was a reasonable interpretation of the State law and policy because the issue of whether or not DISCs could apportion part of their income outside the State had not been decided by the courts at the time Petitioner filed its returns and paid the tax. During that time the Comptroller insisted that DISCs report 100% of their income on their Maryland returns and any DISC which failed to comply was appropriately assessed. It was not until 1983 that this Court rendered a decision which held that DISCs are entitled to apportion part of their income outside the State. Thus Petitioner's mistake was attributable to the State and Section 310(c) mandates that interest be paid on the resultant refund."

*Id.* (internal citations omitted).

The Tax Court applied the standard articulated in *DeBois* to SAIC's original tax return, finding that SAIC "used reasonable judgment under the circumstances, was led by the laws, regulations, or policies expressed by the State to the mistaken conclusion that tax was owed," and thus its error was attributable to the State. The Tax Court's application of the *DeBois* standard comports with the plain meaning of "attributable" as used in § 13–603(b).

One guide to the plain meaning of "attributable" is the dictionary definition. A dictionary definition is not dispositive of the meaning of a statutory term, but it may "provide a useful starting point for discerning what the legislature could have meant in using a particular term." *Ishola,* 404 Md. at 161, 945 A.2d at 1276. In 1951, the year before the term "attributable" was first used in the context of this statute,[7]

---

7. A provision for payment of interest on a refund was first included in the tax statute by 1939 Md. Laws, ch. 277, § 241, codified as Art. 81, § 248 of the Md. Code (1939). Section 248 provided that "[i]n the event the overpayment results from an error not due to the fault of the taxpayer a refund shall be paid with interest at 6% per annum." *Id.* That provision was repealed by 1945 Md. Laws, ch. 269. In 1952, a new provision for payment of interest on refunds was enacted by 1952 Md. Laws, ch. 28, codified at Art. 81, § 306, Md. Code (1951). Section 306 provided that interest would not be paid "where the tax originally

Webster's New World Dictionary defined "attributable" as "*adj.* that can be attributed." WEBSTER'S NEW WORLD DICTIONARY OF THE AMERICAN LANGUAGE 96 (encyc. ed. 1951). "Attribute" is defined therein as follows: "*v.t.* to set down or think of as belonging to, produced by, or resulting from; assign or ascribe (to) . . ." *Id.*

The commonsense understanding of the phrase "attributable to the State" as used in § 13–603(b) means that the mistake or error can be said to be caused by the State. The Tax Court's *DeBois* standard is an articulation of the factual circumstances that signify that an error or mistake could be "set down or th[ought] of as belonging to, produced by, or resulting from; assign[ed] or ascrib[ed] to" the State. The interpretation of "attributable" used by the Tax Court is in keeping with an "ordinary, popular understanding of the English language." *Bowen,* 402 Md. at 613, 937 A.2d at 257.

 The Comptroller urges this Court to find the Tax Court erred as a matter of law in applying the *DeBois* standard, arguing that *DeBois* goes beyond the language of the statute. The Comptroller proposes that an error or mistake cannot be "attributable" to the State unless it was caused by an assessment or other direct action taken by the State during the claimant's original tax filing process. The Comptroller's proposed interpretation, when considered in the context of our reasoning in *Fairchild* and *Davidson,* does not give full effect to each word and phrase of § 13–603(b).

In *Fairchild* and *Davidson,* this Court considered two scenarios where the taxpayer was due a refund although the taxpayer did not err in filing the original return. In *Fairchild,* the refund was due based upon a statute. *Fairchild,* 303 Md. at 283, 493 A.2d at 342. In *Davidson,* the refund was due because the taxpayer, in filing the original return, was complying with an assessment by the State. *Davidson,* 234

paid was paid in whole or in part by reason of a mistake or error on the part of the taxpayer and not attributable to the State or any department or agency thereof." *Id.*

Md. at 271, 199 A.2d at 360. Although our characterization of an assessment as not a mistake or error in *Davidson* was dicta, it reflects sound reasoning—if the State requires a taxpayer to pay some amount by assessment, and the taxpayer faces penalties for non-compliance, the taxpayer cannot be said to have made a mistake when it pays the required amount. If the only scenario in which a taxpayer action is attributable to the State is when the State actively requires the taxpayer to pay a certain amount of taxes, as the Comptroller contends, § 13–603(b) would, effectively, allow interest on the refund only where no taxpayer mistake was made. This interpretation renders the phrase "attributable to the State" surplusage, and we therefore reject it.

The Tax Court's interpretation of "attributable to the State" comports with the plain meaning of that phrase. The Tax Court did not err as a matter of law in using the *DeBois* standard to evaluate whether SAIC's original mistake on its return could be deemed "attributable to the State."

 We next turn to address the Comptroller's contention that the Tax Court improperly applied the *DeBois* standard to SAIC's interest refund claim. The Tax Court applied the DeBois standard to the facts of SAIC's case and made factual findings to support its legal conclusion that the original return was incorrect because it contained "an error or mistake of the claimant not attributable to the State" and, therefore, interest on the refund was due. The Tax Court was engaged in deciding a mixed question of fact and law. In considering this Court's role in reviewing a decision of the Tax Court involving mixed questions of fact and law, we have stated as follows:

"Finally, we note that the interpretation of the tax law can be a mixed question of fact and law, the resolution of which requires agency expertise. *NCR Corp. v. Comptroller*, 313 Md. 118, 133–134, 544 A.2d 764, 771 (1988) (stating that 'determinations involving mixed questions of fact and law must be affirmed if, after deferring to the Tax Court's expertise and to the presumption that the decision is correct, a reasoning mind could have reached the Tax Court's

conclusion.')(internal quotation marks omitted). *See also Vann,* 382 Md. at 298, 855 A.2d at 320 (stating that '[d]eferential review over mixed questions of law and fact is appropriate in order for the agency to fulfill its mandate and exercise its expertise'); *CBS [v. Comptroller],* 319 Md. at 698, 575 A.2d at 329 (noting that, 'we apply [a] deferential standard of review not only to its fact-finding and its drawing of inferences, but also to its 'application of the law to the facts'); *Ramsay, Scarlett & Co.,* 302 Md. at 838, 490 A.2d at 1303 (holding that 'whether a business is unitary or separate . . . for tax purposes . . . is not solely a question of law' and therefore, the Tax Court's decision on the question deserves deference. Rather, we must ask 'whether in light of substantial evidence appearing in the record, a reasoning mind could reasonably have reached the conclusion reached by the Tax Court, consistent with a proper application [of the tax statute in question].')."

*Citicorp,* 389 Md. at 164, 884 A.2d at 116–17. We affirm the Tax Court's conclusion regarding a mixed question of fact and law if it is supported by substantial evidence. *Id.* Upon a review of this record, we conclude that the Tax Court's conclusion was supported by substantial evidence.

When SAIC filed its amended return, the State denied the refund request. The Comptroller's letter stated, in pertinent part, as follows:

"We have reviewed the return referenced above and the request for an adjustment and/or refund must be denied.

"The State of Maryland does not allow a subtraction for the exclusion of capital gain from the sale of NSI shares so we are unable to allow the requested adjustment.

"If you wish to dispute this decision, you must request an informal hearing within thirty (30) days of the date of this letter. . . ."

The Tax Court inferred from the Comptroller's letter and subsequent denial of SAIC's appeal that the State's laws and polices at the time SAIC filed the original return required that SAIC pay tax on the sale of NSI shares. We give deference

to inferences drawn by the Tax Court. *Citicorp,* 389 Md. at 163–64, 884 A.2d at 116. The inference drawn by the Tax Court in this case was a result of the Comptroller's stated position in the underlying petition for a refund. The Comptroller never pointed to, and upon an independent examination we do not find, any evidence to contradict the Tax Court's inference.[8] The Tax Court's inference constitutes substantial evidence upon which its finding that the Comptroller owed SAIC interest on the refund was based. We therefore affirm the judgment of the Tax Court and the Circuit Court awarding interest on the refund to SAIC.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.*

---

**8.** The Comptroller argued that this Court's decision in *Hercules v. Comptroller,* 351 Md. 101, 716 A.2d 276 (1998), which held that there was an insufficient nexus with Maryland to tax a gain realized from the sale of a corporate affiliate, contradicted the Tax Court's conclusion that SAIC could have been led by the laws, regulations and polices of the State to believe that the sale of NSI stock shares was taxable because the case was decided before SAIC filed its original return. *See id.* at 109–19, 716 A.2d at 279–85. The Tax Court was well aware of *Hercules,* as it provided the basis for its decision in SAIC's original refund claim. The disagreement between the Comptroller and SAIC involved factual determinations about the nature of the NSI stock holdings and the sale's nexus to Maryland that differed from the factual circumstances of *Hercules.* The Tax Court was therefore in the best position to evaluate whether *Hercules* gave notice to SAIC that no tax was due on the sale of NSI stock shares, and, in fact, stated that "[t]his Court had not yet decided the issue, that particular issue of whether the sale of Petitioner's subsidiary was taxable in Maryland." The existence of the *Hercules* decision at the time that SAIC prepared their original return does not discredit the Tax Court's inference that the Comptroller's letter reflected the policies of the State.